NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-5052


MARSHALL KENNETH FLOWERS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Marshall K. Flowers, of Jacksonville, Florida, pro se.

Meredyth D. Cohen Havasy, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee.  With her on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director.

Appealed from:  United States Court of Federal Claims

Judge Margaret M. Sweeney.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-5052

MARSHALL KENNETH FLOWERS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 05-CV-1163, Judge Margaret M. Sweeney.

_____

DECIDED: November 5, 2008

_____

Before RADER, LINN, and MOORE, Circuit Judges.

PER CURIAM.

Marshall K. Flowers ("Flowers") appeals from final orders of the United States Court of Federal Claims denying his motion for discovery and granting the government's motions pursuant to Rules 56 (summary judgment), 52.1 (judgment on the administrative record), 12(b)(1) (lack of subject matter jurisdiction), and 12(b)(6) (failure to state a claim) of the Rules of the United States Court of Federal Claims ("RCFC"). Flowers v. United States, 75 Fed. Cl. 615 (2007); Flowers v. United States, 80 Fed. Cl. 201 (2008). Flowers also appeals from the denial of his RCFC 40.1 motion to reassign the case to a different judge. Flowers v. United States, No. 05-1163C (Fed. Cl. Jan. 29, 2008) ("Recusal Opinion"). For the following reasons, we affirm.

BACKGROUND

On October 31, 2005, Flowers filed this action in the Court of Federal Claims. In an amended complaint dated June 27, 2006, Flowers sought relief on the following counts: (1) coercion into accepting nonjudicial punishment ("NJP"); (2) intimidation and violation of Army regulations; (3) violation of Fifth Amendment due process and liberty interests; (4) violation of Fifth Amendment rights arising from the Army's alleged seizure of savings bonds; (5) violation of a contractual agreement by the United States Department of Treasury ("Treasury Department") regarding the savings bonds; and (6) breach of contract for damage to household goods. In an order dated March 1, 2007, the Court of Federal Claims granted the government's motion for summary judgment on Counts 5 and 6 of the amended complaint and denied Flowers's motion for discovery. Flowers, 75 Fed. Cl. at 636. The remaining counts were dismissed on January 18, 2008. Flowers, 80 Fed. Cl. at 227. In particular, the Court of Federal Claims found Counts 1-3 to contain interwoven tort, constitutional, and statutory military pay claims, and disposed those claims as follows: judgment pursuant to RCFC 52.1 on all military pay claims; dismissal pursuant to RCFC 12(b)(1) of claims sounding in tort, alleging Fourth Amendment and Fifth Amendment due process and double jeopardy clause violations, or seeking removal of the Army's bar to reenlistment; and dismissal pursuant to RCFC 12(b)(6) of claims alleging ineffective assistance of counsel, requesting correction of military records, or asserting a Fifth Amendment liberty interest. Id. Count 4 was dismissed pursuant to RCFC 12(b)(1). Id. On January 29, 2008, the Court of Federal Claims denied Flowers's RCFC 40.1 motion to reassign the case to a different judge. Recusal Opinion, slip op. at 7.

Flowers appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### A. Summary Judgment

We review a grant of summary judgment by the Court of Federal Claims de novo. Suess v. United States, 535 F.3d 1348, 1359 (Fed. Cir. 2008). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c).

### 1. Savings Bond Claim

The Court of Federal Claims granted the government's motion for summary judgment on Flowers's savings bond claim (Count 5), holding that Flowers lacked standing because he is not the registered owner of the savings bonds and that a prior federal suit filed by Flowers precludes him from relitigating this same issue. Flowers, 75 Fed. Cl. at 632. In the prior federal suit, the U.S. District Court for the District of Hawaii found that savings bonds valued less than $10,000 were registered not to Flowers but to his adult daughters, and that this registration confers ownership to them, not him. Flowers v. Sec'y of the U.S. Dep't of Treasury, No. CV-03-16 (D. Haw. Jun. 13, 2003), aff'd, 132 Fed. Appx. 728 (9th Cir. 2005). When Flowers later brought the instant suit to recover savings bonds valued over $10,000, the Court of Federal Claims similarly found that these bonds were registered in the names of his daughters and that the Treasury Department had already issued checks to the daughters for their respective bonds. Flowers, 75 Fed. Cl. at 630. Because 31 C.F.R. § 353.5(a) is a federal regulation that explicitly provides that "registration is conclusive of ownership," the Court of Federal

Claims held that Flowers cannot rely on state law to establish ownership. Consequently, the Court of Federal Claims rejected Flowers's argument that a prior state court's default judgment against his daughters confers ownership to him. Indeed, at the time Flowers sued his daughters in state court to establish ownership, his complaint failed to disclose that the Treasury Department had already made payment to the daughters on their respective bonds. Under principles of federal supremacy, the Court of Federal Claims held that 31 C.F.R. § 353.5(a), and not the state court's default judgment, determines the bonds' ownership. Flowers, 75 Fed. Cl. at 631.

On appeal, Flowers attempts to avoid the effect of federal preemption. He primarily relies on Bodek v. Department of Treasury, 532 F.2d 277 (2d Cir. 1976), for the proposition that ownership disputes between private parties are to be governed by state law rather than federal law. In that case, decided prior to the promulgation of 31 C.F.R. § 353 (effective January 1, 1980), the Second Circuit held that an ownership dispute between a son and his parents over U.S. savings bonds did not fall within the category of "loss, theft, destruction, mutilation, or defacement" of the applicable statute under which the Treasury Department was authorized to grant relief. Bodek, 532 F.2d at 280 (quoting 31 U.S.C. § 738(a)). Rather, the Second Circuit found that the parties' quarrel, at that time, was a matter to be settled among themselves, either privately or in a state court. The implementation of 31 C.F.R. § 353.5(a) in 1980 changed that. The federal regulation now provides, with limited exception, that "registration is conclusive of ownership." Id. The only listed exception is for correction of registration errors, which are not at issue here. Id. § 353.49. Because there is no dispute that the savings bonds are registered to Flowers's adult daughters, and because 31 C.F.R. § 353.5(a) controls

the question of ownership, the Court of Federal Claims correctly found that the state default judgment was inapplicable. See also Flowers v. Sec'y of the U.S. Dep't of the Treasury, 132 Fed. Appx. 728, 729 (9th Cir. 2005) ("Flowers is not the registered owner and cannot, under principles of federal supremacy, rely on a contrary state court judgment to establish ownership."); Hardymon v. Miller, 718 F. Supp. 723, 725 (S.D. Ind. 1989) (holding that a contrary state court judgment cannot turn solely-owned savings bonds into probate assets in violation of 31 C.F.R. § 353.5(a)).

## 2. Shipment of Household Goods

The Court of Federal Claims granted the government's motion for summary judgment on Count 6, in which Flowers seeks to recover the value of his household goods that were lost or damaged when the Army delivered those goods from Hawaii to Australia. The trial court found that Flowers had already received $4,425 from the Army to replace the lost or damaged goods, and that a finality provision of the Military Personnel and Civilian Employees' Claims Act ("MPCECA") precludes judicial review of the Army's disallowance of any additional settlement. Flowers, 75 Fed. Cl. at 635 (noting that the MPCECA provides that settlement of a claim by the military is "final and conclusive") (quoting 31 U.S.C. § 3721(k)). In addition, the trial court noted that the MPCECA is not a money-mandating statute; thus, the MPCECA does not create a substantive right that would allow the Court of Federal Claims to exercise jurisdiction under the Tucker Act. Flowers, 75 Fed. Cl. at 635 (stating that the Secretary's authority under the MPCECA is discretionary because he "may," but need not, settle claims) (quoting 31 U.S.C. § 3721(b)(1)).

On appeal, Flowers does not address these major defects in his claim. Nor does he dispute the fact that he received a $4,425 settlement for his household goods. That settlement is "final and conclusive" under 31 U.S.C. § 3721(k) and is not subject to judicial review. Shull v. United States, 228 Ct. Cl. 750 (1981) (holding that the term "final and conclusive" precludes judicial review of Army claims decisions). We therefore affirm the grant of summary judgment.

### B.  Discovery

Discovery orders in the Court of Federal Claims are reviewed for abuse of discretion. Brubaker Amusement Co., Inc. v. United States, 304 F.3d 1349, 1356 (Fed. Cir. 2002). The trial court limited the scope of discovery to rebutting the government's then-pending motion for summary judgment on Counts 5 and 6. Flowers sought to depose various military officials, Treasury Department officials, and his two daughters. To support his discovery request, Flowers stated that he "intends to show that U.S. Saving [sic] Bonds were purchased by him [and] maintained in his possession until removed by a government person." Flowers, 75 Fed. Cl. at 629 (quoting Pl.'s Mot. 14). The trial court denied Flowers's motion for discovery, finding that no part of the motion was directed to the dispositive issue of ownership and standing. Like his discovery motion, Flowers's appellate brief is directed primarily to the government's alleged seizure of his savings bonds, not the registered ownership of those bonds. Because ownership depends on the bonds' registration, not their purchase or possession, 31 C.F.R. § 353.5(a), the trial court did not abuse its discretion in denying Flowers's request to discover information wholly unrelated to the question of registration.

### C.  Judgment on the Administrative Record

We review the Court of Federal Claims's factual determinations in a judgment on the administrative record for clear error and the court's legal conclusions without deference. RCFC 52(a); Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006). The trial court granted the government's RCFC 52.1 motion on Flowers's Military Pay Act claim, under which Flowers alleges that he was coerced into accepting NJP and seeks pay that he would have received had he not involuntarily retired.

The trial court found no merit in this claim, and neither do we. Flowers applied for and was granted voluntary retirement effective January 1, 2000, although that date was ultimately extended to January 31, 2000. He was compensated through January 31, 2000, his last day of active duty. Flowers now seeks pay exclusively for a period of time beyond that date. Because Flowers was no longer a service member after January 31, 2000, he is not entitled to relief under the Military Pay Act, 37 U.S.C. § 204. See James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1998) ("Once James' term of enlistment ended, he no longer was entitled to pay under 37 U.S.C. § 204, because he was no longer a service member.").

The trial court also concluded that Flowers failed to prove that his retirement was involuntary. We agree. A decision to retire is presumed voluntary. Carmichael v. United States, 298 F.3d 1367, 1372 (Fed. Cir. 2002). The presumption can be rebutted if Flowers demonstrates that: (1) he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) those circumstances were the result of the government's coercive acts. Id. Contrary to Flowers's unsubstantiated allegations of coercion, the trial court made detailed findings of the circumstances of his decision to accept NJP, all tending to show that the decision was voluntary. Flowers, 80

Fed. Cl. at 219 (noting that Flowers was furnished with alternatives, consulted with counsel, and participated in setting favorable terms of his retirement). Flowers faced the prospect of a court-martial on numerous counts of larceny and a dishonorable discharge; he instead chose to accept NJP, an honorable discharge, and retirement at full rank. Id. at 221. The most that can be said is that Flowers faced a choice between two unpleasant alternatives. But, as we have said, "a choice is not involuntary simply because an employee is faced with an inherently unpleasant situation or his choice is limited to two unpleasant alternatives." Terban v. Dep't of Energy, 216 F.3d 1021, 1026 (Fed. Cir. 2000).

## D. Dismissal

"We review the Court of Federal Claims's decision to dismiss for lack of jurisdiction and for failure to state a claim without deference." Gallo v. United States, 529 F.3d 1345, 1348 (Fed. Cir. 2008).

### 1. Correction of Military Record

The trial court dismissed pursuant to RCFC 12(b)(6) Flowers's request to correct his military records, holding that it could not grant equitable relief under 28 U.S.C. § 1491(a)(2) because no money damages were owed for back pay. Flowers, 80 Fed. Cl. at 222 ("The court . . . may correct applicable records only 'as an incident of and collateral to' a judgment against the United States for money damages.") (quoting 28 U.S.C. § 1491(a)(2)). Because we have affirmed, supra, the trial court's judgment on the administrative record of Flowers's military pay claim, to which equitable relief might conceivably have been tied, we likewise affirm its holding that the absence of money damages in this case divests the court of its ability to grant equitable relief. See James

v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) ("Stated another way, the Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'") (quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)).

## 2. Tort Claims

The trial court dismissed pursuant to RCFC 12(b)(1) all claims sounding in tort. Those claims included allegations that the Army engaged in various criminal and tortious acts, as well as racial discrimination. The court found that it lacked jurisdiction to hear such claims. Accepting as true all of Flowers's allegations of fact, we agree with the Court of Federal Claims that those claims fall outside of the court's limited jurisdiction. See Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."); Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994) (stating that the Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code"). To whatever extent Flowers may be asserting his discrimination claims under Title VII of the Civil Rights Act, the Court of Federal Claims similarly lacks jurisdiction over them. 28 U.S.C. § 1343(a) (vesting original jurisdiction exclusively in "district courts").

## 3. Fourth and Fifth Amendment Claims

Flowers has alleged Fourth Amendment violations, as well as Fifth Amendment Takings, Due Process, and Double Jeopardy Clause violations. Those claims were dismissed pursuant to RCFC 12(b)(1). Flowers also asserted a Fifth Amendment liberty

interest in his military employment. That claim was dismissed pursuant to RCFC 12(b)(6).

We see no error in the trial court's dismissal of these claims. Jurisdiction in the Court of Federal Claims is limited under the Tucker Act to those claims based on "a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." James, 159 F.3d at 580. The Fourth Amendment does not mandate the payment of money; therefore, the Court of Federal Claims lacks jurisdiction over any alleged search and seizure violation. Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over . . . such a violation."). The same is true of Fifth Amendment Due Process and Double Jeopardy Clause violations. James, 159 F.3d at 581 ("[T]he Court of Federal Claims lacks jurisdiction over [due process and double jeopardy] claims because neither of the two clauses is a money-mandating provision.").

Flowers's appellate brief addresses only the takings claim. He contends that he should have been given leave to allege additional facts to establish the necessary cause of action. This takings claim (Count 4), however, is merely a Fifth Amendment variant of his breach of contract claim (Count 5), on which he lost for failure to establish ownership of the savings bonds. This lack of ownership is similarly fatal to Flowers's takings claim. See Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken, even for regulatory takings."); Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("It is axiomatic

that only persons with a valid property interest at the time of the taking are entitled to compensation."). As previously mentioned, it is undisputed that the savings bonds were registered in the names of Flowers's adult daughters at the time of the alleged taking. Because "registration is conclusive of ownership" under 31 C.F.R. § 353.5(a), we agree that Flowers's takings claim should be dismissed.

Nor did the Court of Federal Claims err in declining to transfer the takings claim to a district court pursuant to 28 U.S.C. § 1631, which authorizes transfer "in the interest of justice" only to a court "in which the action . . . could have been brought at the time it was filed." The issue of ownership has been repeatedly litigated. The U.S. District Court for the District of Hawaii found that Flowers has no ownership interest in the savings bonds valued less than $10,000. Flowers v. Sec'y of the U.S. Dep't of the Treasury, No. CV-03-16 (D. Haw. Jun. 13, 2003), aff'd, 132 Fed. Appx. 728 (9th Cir. 2005). The Court of Federal Claims reached the same conclusion for bonds exceeding $10,000 in value. We therefore reject the argument that this claim should now be heard again in a district court.

E. Recusal

The trial judge denied Flowers's RCFC 40.1 motion to reassign the case to a different judge and also declined recusal pursuant to 28 U.S.C. § 455. Recusal Opinion, slip op. at 1. Flowers's unsubstantiated allegations of bias and prejudice amount to nothing more than mere displeasure with the court's rulings dismissing his meritless claims. As the Supreme Court has stated, however, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Because Flowers points to no "extrajudicial source"

of the alleged bias or prejudice, he must prove that the judicial opinions or remarks "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. No such inference can be drawn here. Nothing in the record suggests that Judge Sweeney's conduct of the proceedings was anything other than evenhanded and professional. Mindful of the court's duty to hold pro se plaintiffs to "less stringent standards than litigants represented by counsel," Flowers, 80 Fed. Cl. at 209 (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), Judge Sweeney excused Flowers's failure to address his takings claim in opposition to the government's motion to dismiss, Flowers, 80 Fed. Cl. at 225 n.14, and entertained a Fourth Amendment argument raised for the first time in his reply brief, id. at 214 n.11. These charitable acts certainly do not evidence a deep-seated favoritism for the government or antagonism against Flowers. Indeed, on several occasions, Judge Sweeney went out of her way to direct both the government and the Clerk of the Court to provide Flowers with courtesy copies of all court filings, even as Flowers submitted over ten notices changing his address during the course of the litigation. Recusal Opinion, slip op. at 3 n.5. Though Flowers argues prejudice due to some "missing administrative records," Judge Sweeney granted Flowers leave to supplement the record with precisely those documents he now says are missing. Id. at 2 n.4. Rather than evidencing bias or prejudice, the record shows that the trial court gave Flowers a fair opportunity to present his case.

## CONCLUSION

The judgment of the Court of Federal Claims is affirmed in all respects.