Oscar **RUEDA–ROJAS**, Plaintiff, pro se,

v.

The **UNITED STATES**, Defendant.

No. 10–593.

United States Court of Federal Claims.

May 23, 2011.

Oscar Rueda–Rojas, Plaintiff, Pro Se.

Michael Steven Macko, United States Department of Justice, Civil Division, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

## I. RELEVANT FACTS.[1]

In May 2005, Oscar Rueda–Rojas ("Plaintiff") applied for employment as a "casual" mail carrier[2] at a United States Postal Service (USPS) office in Miami, Florida. Compl. ¶ 7. Thereafter, he passed a criminal background report, submitted a clean driver license record, completed drug screening, and received the required medical clearance from the Associate Area Medical Director. *Id.* Plaintiff was offered a position as a "casual" mail carrier and scheduled to report for training on June 2, 2005. *Id.*

On May 30, 2005, two days before training was to begin, USPS informed Plaintiff that his training was cancelled, and he was requested to produce records to explain a medical condition diagnosed during his prior military service. Pl. Supp. Appx. at 1. On June 2, 2005, Plaintiff produced a letter from his physician, but USPS rescinded his offer. *Id.*

In response, Plaintiff filed Complaint No. 4h–330–0213–05 with the USPS Equal Employment Opportunity ("EEO") Office. Compl. ¶¶ 9–10. On June 23, 2005, Plaintiff

signed a REDRESS mediation program[3] agreement that described the terms of mediation, and notified Plaintiff of his right to file a formal complaint if his dispute was not resolved within 90 days. Pl. Appx. at 1–2.

On July 7, 2005, Plaintiff entered into a Settlement Agreement with USPS ("July 7, 2005 Settlement Agreement") that provided:

1. [Plaintiff] will be provided w/ a copy of the 6/21/05 letter to Nat'l Personnel Records Center at hearing site.

2. [The USPS Management Official] agrees that when the information is received from the Nat'l Personnel Records Center and it is medical, she will forward same to the Med Unit. She will also contact [the Associate Area Medical Director] and advise her that [Plaintiff] would like to meet w/ her personally to explain the situation and also ask her to provide him w/ an independent eval & any other consideration possible.

7/7/05 SA 1.

Thereafter, Plaintiff requested the right to file a formal discrimination complaint, but was told that his case was settled and the only option was to wait for a position to become available. Compl. ¶ 10.

On April 24, 2006, Plaintiff filed a precomplaint counseling request with USPS EEO Office alleging breach of the July 7, 2005 Settlement Agreement. Pl. Supp. Appx. at 8, 10. On May 25, 2006, the USPS sent Plaintiff a letter indicating that, after an investigation, the EEO determined that the USPS had complied with the July 7, 2005 Settlement Agreement, and that Complaint No. 4h–330–0213–05 would not be reinstated. *Id.* at 8.

On June 7, 2006, Plaintiff filed a Complaint with the Equal Employment Opportunity

---

1. The relevant facts were derived from: the September 2, 2010 Complaint ("Compl."); the Appendix attached to the Government's November 1, 2010 Motion To Dismiss ("Gov't Appx. at 1–18"); the Appendix attached to Plaintiff's December 2, 2011 Response ("Pl. Appx. at 1–2"); a July 7, 2005 Settlement Agreement, filed by the Government April 11, 2011 ("7/7/05 SA 1–2"); and the Appendix attached to Plaintiff's May 2, 2011 Supplemental Brief ("Pl. Supp. Appx. at 1–10").

2. "Casual" USPS employees are "limited to two 89–day appointments in a calendar year." Gov't Appx. at 2.

3. REDRESS is "a voluntary program available to all employees as part of the Postal Service's Equal Employment Opportunity (EEO) complaint process." REDRESS (2011), available at http://www.usps.com/redress.

Commission ("EEOC"). Compl. ¶ 11. The EEOC contacted USPS to notify them of the Complaint. *Id.* As a result, the USPS offered Plaintiff a second REDRESS mediation. *Id.*

On August 28, 2006, Plaintiff entered into a second Settlement Agreement with USPS ("August 28, 2006 Settlement Agreement"). Gov't Appx. at 1–2. Therein, Plaintiff agreed to withdraw all complaints against the USPS and not institute any further administrative or legal proceeding for any claim that existed prior to the agreement. Gov't Appx. at 2, ¶ 7. In exchange, the USPS promised to consider Plaintiff for temporary employment as a "casual" carrier. *Id.* at 2, ¶ 1. The USPS also agreed not to take "retaliation of any kind toward Plaintiff due to his filing of the complaint." *Id.* at 1, ¶ 11. This provision mirrors Title VII of the Civil Rights Act of 1964: "It shall be unlawful ... to discriminate against any individual ... because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a). The August 28, 2006 Settlement Agreement states that "this settlement was reached voluntarily without coercion." *Id.* at 2 ¶ 8.[4]

On September 11, 2006, the USPS placed Plaintiff in a "casual" mail carrier position at the Jose Marti Station in Miami, Florida. Compl. ¶ 14. Within a month, Plaintiff was criticized for his job performance and was terminated in December, 2006. *Id.* One to two weeks later, the USPS reinstated Plaintiff at the Flagler Station also in Miami. *Id.* ¶ 15. On January 18, 2007, Plaintiff was terminated from the Flagler Station position. *Id.*

On December 14, 2007, Plaintiff filed Complaint No. 4h–330–0243–06 at the USPS EEO Office, contesting the terms of the August 28, 2006 Settlement Agreement and requesting that his Complaint, No. 4h–330–0213–05, be reinstated. *Id.* ¶ 16. On April 15, 2008, the USPS EEO Office denied this request, finding that the agency was in compliance with the August 28, Settlement Agreement. *Id.* ¶ 17.

## II. PROCEDURAL HISTORY.

### A. Before The U.S. Equal Employment Opportunity Commission.

Plaintiff timely appealed the USPS's April 15, 2008 decision to the Equal Employment Opportunity Commission, arguing that his terminations from the Jose Marti Station and the Flagler Station breached the August 28, 2006 Settlement Agreement's non-retaliatory provisions and violated Title VII; that the August 28, 2006 Settlement Agreement improperly required him to withdraw his previous EEO Complaint; and that USPS misled Plaintiff by implying that the REDRESS mediator was appointed by the EEOC, when in fact, the mediator was paid for by the agency. *See Rueda–Rojas v. Potter*, EEOC Decision No. 0120082543, 2008 WL 4463724, at *1 (Sept. 25, 2008).

On September 25, 2008, the EEOC affirmed the USPS's April 15, 2008 decision, finding no evidence that the agency misled Plaintiff or improperly induced him to sign the August 28, 2006 Settlement Agreement, and determining that a settlement agreement is not facially retaliatory simply because it requires an individual to withdraw his or her complaint in exchange for hiring or promoting that individual. *Id.* at *2. The EEOC did not reach the issue of whether the terminations were retaliatory, explaining that if Plaintiff wanted to bring these claims, he would have to contact an EEO counselor and bring separate complaints. *Id.*; *see also* 29 C.F.R. § 1614.504(c) (2010) ("Allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints under § 1614.106 or § 1614.204, as appropriate, rather than under this section.").

### B. Before The Southern District Of Florida.

On March 9, 2010, Plaintiff filed a Complaint in the United States District Court for the Southern District of Florida alleging that the USPS breached the anti-retaliation provi-

---

4. The September 2, 2010 Complaint alleges that Plaintiff was coerced and forced into the RE-DRESS program. Compl. ¶ 12.

sion of the August 28, 2006 Settlement Agreement, and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). *See Rueda–Rojas v. Potter,* No. 10–20707, 2010 WL 2942648, at *3 (S.D.Fla. July 26, 2010).

The Government moved to dismiss for lack of subject matter jurisdiction. *Id.* at *2. Although Congress has waived sovereign immunity in Title VII suits, the Government argued that there was no express waiver for claims that are based upon "monetary claims or claims for specific performance against the government for an alleged breach of a settlement agreement that purportedly settles a Title VII dispute," and that these types of claims would fall within the exclusive jurisdiction of the United States Court of Federal Claims. *Id.*

On July 26, 2010, the United States District Court determined that it did not have jurisdiction to adjudicate claims based on Title VII or based on a breach of the August 28, 2006 Settlement Agreement. *Id.* at *3 (citing *Brown v. United States,* 389 F.3d 1296, 1297 (D.C.Cir.2004) ("In order for [plaintiff] either to pursue remedies for breach of contract or to seek relief under Title VII, she must first prove the [agency] breached the settlement agreement. And because this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims.")).

### C. Before The United States Court Of Federal Claims.

On September 2, 2010, Mr. Rojas filed a Complaint in the United States Court of Federal Claims, alleging unlawful retaliation in violation of Title VII, and the August 28, 2006 Settlement Agreement. Compl. ¶¶ 1, 18–19. The Complaint also may be read to allege a violation of 29 C.F.R. § 1614.105(f) (requiring EEO mediation to be resolved within 90 days), or seeking rescission of the July 7, 2005, and August 28, 2006 Settlement Agreements. Compl. ¶¶ 10, 13.

On November 1, 2010, the Government filed a Motion To Dismiss ("Gov't Mot.") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), together with an appendix of exhibits ("Gov't Appx. at 1–18"). On December 2, 2010, Plaintiff filed a Response ("Pl. Res.") with an appendix of exhibits ("Pl. Appx. at 1–2"). On December 17, 2010, the Government filed a Reply ("Gov't Reply").

On March 30, 2011, the court issued an Order directing the Government to produce the July 7, 2005 Settlement Agreement. On April 11, 2011, the Government filed that document, together with a Motion requesting leave to file a supplemental brief. On April 12, 2011, the court issued an Order granting the Government's April 11, 2011 Motion. On that same day, the Government filed a Supplemental Brief ("Gov't Supp. Br."). On May 2, 2011, Plaintiff filed a Supplemental Brief ("Pl. Supp. Br."), together with an appendix of exhibits ("Pl. Supp. Appx. at 1–10").

### III. DISCUSSION.

#### A. Jurisdiction.

■ The Tucker Act authorizes the United States Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

■ Therefore, in order to pursue a substantive right within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal

statute, or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir. 2005) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").

## B. Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.,* 413 F.3d 1327, 1334 (Fed.Cir.2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Specifically, to establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130).

The September 2, 2010 Complaint alleges that Plaintiff has suffered an injury in fact, that is traceable to the Government's alleged violation of Title VII and breach of two settlement agreements, that has caused Plaintiff economic injury in a specific amount that can be determined. Compl. ¶ 1–17. Therefore, the court has determined that Plaintiff has established standing.

## C. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *See Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995). Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, ... [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of evidence.").

## D. Standard For Decision On A Motion To Dismiss, Pursuant to RCFC 12(b)(6).

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citations omitted). In order to survive a motion to dismiss, however, the court "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct.

1955; *see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and ... indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001) (citations omitted); *see also Iqbal,* 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### E. *Pro Se* Litigants

 The pleadings of a *pro se* Plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers") (internal quotation and citation omitted). Indeed, it has been the tradition of this court to examine the record "to see if [a *pro se* ] Plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct.Cl.1969). Nevertheless, while the court may excuse ambiguities in a *pro se* Plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir. 1995).

### F. The Government's November 1, 2010 Motion To Dismiss.

### 1. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Alleged Violations Of Title VII.

 The United States Court of Federal Claims does not have jurisdiction to adjudicate allegations arising under Title VII, because Congress vested the United States District Courts with exclusive jurisdiction over such claims. *See* 28 U.S.C. § 1343(a)(4) ("The district courts shall have original jurisdiction of any civil action ... [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights[.]"); *see also Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) ("[T]he structure of the 1972 amendment itself fully confirms the conclusion that Congress intended it to be exclusive and preemptive."); *Bunch v. United States,* 33 Fed. Cl. 337, 341 (1995) ("Congress has stated clearly that claims of racial discrimination based on a federal statute may only be brought in United States District Court."), *aff'd,* 78 F.3d 605 (Fed.Cir.1996).

The jurisdiction of United States Court of Federal Claims over agency agreements to settle Title VII claims has not been considered by the United States Court of Appeals for the Federal Circuit. In *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the United States Supreme Court held that the United States District Courts do not have jurisdiction over the enforcement of settlement agreements without "some independent basis for federal jurisdiction." *Id.* at 381–82, 114 S.Ct. 1673. Subsequent decisions by the United States Court of Federal Claims hold that the court's jurisdiction over settlement agreements "must be analyzed separate from the statutory schemes from which they arose." *Taylor v. United States,* 73 Fed.Cl. 532, 544 (2006); *see also Westover v. United States,* 71 Fed.Cl. 635, 638–39 (2006) (holding that jurisdiction over Title VII settlement agreements is independent from jurisdiction over Title VII claims).

Nevertheless, the court's jurisdiction over Title VII settlement agreements is proper only so long as the Plaintiff previously "has not requested review of the substantive issues" designated to another forum. *Massie v. United States,* 166 F.3d 1184, 1189 (Fed. Cir.1999); *see also Hansson v. Norton,* 411 F.3d 231, 235 (D.C.Cir.2005) ("[W]hen a settlement agreement incorporates substantive provisions of federal law such that enforcement of the agreement requires the interpretation and application of federal law, that enforcement action arises under federal law and belongs in the district court.").

■ Count I of the September 2, 2010 Complaint alleges that Plaintiff's termination from his position as a "casual" mail carrier was retaliatory and violated both Title VII and the terms of the August 28, 2006 Settlement Agreement. Compl. ¶¶ 1, 18–19. Therefore, the "disposition of the contract claim would require review of subject matter [*i.e.*, Title VII] reserved to another body." *Massie*, 166 F.3d at 1189. In addition, the United States Court of Appeals for the Federal Circuit has not disturbed decisions holding that the United States Court of Federal Claims does not have jurisdiction to adjudicate Title VII claims. *See, e.g., Taylor v. United States*, 310 Fed.Appx. 390, 393 (Fed. Cir.2009) ("Because Title VII vests jurisdiction over discrimination claims exclusively in the district court, the Court of Federal Claims cannot exercise jurisdiction over those claims."). The fact that the contractual provision in the August 28, 2006 Settlement Agreement mirrors the anti-retaliation provision in Title VII does not provide this court with jurisdiction. *See Massie*, 166 F.3d at 1188 ("[A] contract will not fall within the purview of the Tucker Act if Congress has placed jurisdiction over it elsewhere."); *see also Flowers v. United States*, 321 Fed.Appx. 928, 934 (Fed.Cir.2008) ("[T]he Court of Federal Claims ... lacks jurisdiction over [discrimination claims under Title VII].").

For these reasons, the court has determined that the United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in Count I of the September 2, 2010 Complaint.

**2. The United States Court Of Federal Claims Does Not Have Jurisdiction Over Violations Of 29 C.F.R. § 1614.105(f).**

■ The September 2, 2010 Complaint also could be construed to allege that the REDRESS mediation failed to resolve Complaint No. 4h–330–0213–05 within 90 days as required by 29 C.F.R. § 1614.105(f).[5] This regulation, however, is not money-mandating. *See United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (to prove that a statute or regulation is money mandating, a plaintiff must demonstrate that the source of substantive law "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained" (internal quotation marks and citations omitted)). Therefore, the court does not have subject matter jurisdiction to adjudicate the alleged violation of 29 C.F.R. § 1614.105(f).

■ Assuming, *arguendo*, this claim was within the court's jurisdiction, nevertheless, it must be dismissed. Plaintiff agreed to participate in the REDRESS mediation program on June 23, 2005. Pl. Appx. at 1–2. Plaintiff entered into a Settlement Agreement with USPS on July 7, 2005. Compl. ¶ 10; 7/7/05 SA 1–2. Therefore, Plaintiff's claims were resolved within 90 days, and the September 2, 2010 Complaint does not state a plausible claim for relief. *See Iqbal*, 129 S.Ct. at 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

**3. Transfer To The United States District Court For The Southern District Of Florida Is Required.**

■ Since the court does not have jurisdiction to adjudicate Plaintiff's claims, the court must consider whether a transfer is required.[6] The governing statute, 28 U.S.C. § 1631, mandates transfer

[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action ... could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if

---

5. 29 C.F.R. § 1614.105(f) provides: "Where the aggrieved person chooses to participate in an alternative dispute resolution procedure in accordance with paragraph (b)(2) of this section, the pre-complaint processing period shall be 90 days." 29 C.F.R. § 1614.105(f).

6. Although Plaintiff has not requested a transfer, the court may transfer a case upon determining that jurisdiction lies with another court. *See American Lifestyle Homes, Inc. v. United States*, 17 Cl.Ct. 711, 716 (1989) ("Although neither party moved for a transfer, ... [f]inding that jurisdiction may lie in the district court, this court determines retransfer to be appropriate.").

it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (2006).

As a threshold matter, the court has determined it does not have jurisdiction to adjudicate the claims alleged in the September 2, 2010 Complaint.

The Government has taken opposing and contradictory positions on jurisdiction at this court and before the Southern District of Florida. In fact, the Government has conceded that its arguments before the District Court were incorrect as a matter of law:

> The Government had argued in the district court, citing authority not binding on this Court, that jurisdiction was proper here because settlement agreements are contracts and the Court of Federal Claims generally has jurisdiction over breach of contract claims that seek more than $10,000 in damages. This may be the general rule, but the above discussion demonstrates the general rule does not apply in the context of this particular Title VII settlement agreement and its anti-retaliation provision.

Gov't Mot. at 14, n. 15.

■ Plaintiff's September 2, 2010 Complaint alleges retaliatory termination occurring *after* the execution of a settlement agreement. Compl. ¶ 1. Contrary to the Government's argument at the District Court, courts from a variety of circuits, including the D.C. Circuit, have exercised jurisdiction over Title VII retaliation claims despite the fact that the plaintiff had previously executed a settlement agreement. *See, e.g., Munoz v. Mabus,* 630 F.3d 856, 861–66 (9th Cir.2010) (concluding that the District Court did not have jurisdiction over Title VII settlement agreements, but did have jurisdiction over retaliation claim); *Rochon v. Gonzales,* 438 F.3d 1211, 1220 (D.C.Cir.2006) (although "unclear whether the [D]istrict [C]ourt could exercise jurisdiction" over breach of Title VII settlement agreement,

the district court erred in dismissing Plaintiff's retaliation claim). Nothing in *Brown v. United States,* 389 F.3d 1296 (D.C.Cir.2004) (per curiam) changes this result, since that case dealt only with Title VII claims that were disposed of by a settlement agreement, not new Title VII claims occurring after the settlement agreement. *See Brown v. United States,* 271 F.Supp.2d 225, 228 (D.D.C.2003).

■ The United States Court of Appeals for the Federal Circuit has held "there is no per se rule against return of a transferred case by the transferee court."[7] *See Rodriguez v. United States,* 862 F.2d 1558, 1560 (Fed.Cir.1988). The court should not retransfer cases except for in "exceptional circumstances," where the initial transfer decision was "clearly erroneous and would work a manifest injustice." *Id.* That test is met because the Government has taken a contradictory position on this court's jurisdiction at the District Court, thereby inflicting "a manifest injustice" on the Plaintiff. *See National Med. Enters., Inc. v. United States,* 28 Fed. Cl. 540, 545 (1993) ("Where the Government argues that this Court maintains exclusive jurisdiction over a matter before the district court, and then once at this Court, the Government argues that this Court maintains no jurisdiction, the Claims Court has ruled that dismissal upon a finding of a lack of jurisdiction, in lieu of transfer or retransfer to the district court of origination, would 'visit a manifest injustice' upon the plaintiff.").

## IV. CONCLUSION.

For the reasons stated herein, the Clerk of the Court for the United States Court of Federal Claims is directed to transfer this action to the United States District Court for the Southern District of Florida.

**IT IS SO ORDERED.**

---

7. Although technically not a re-transfer, the district court has previously determined that it did not have jurisdiction, and advised Mr. Rojas to

bring the case at this court. *See Rueda–Rojas v. Potter,* No. 10–20707, 2010 WL 2942648, at *3 (S.D.Fla. July 26, 2010).