THE YISRA'EL NATION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–396 C.

United States Court of Federal Claims.

July 1, 2011.

Christopher–David,[1] Riverview, FL, for plaintiff.

James R. Sweet,[2] with whom was Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC, for defendant.

*ORDER*

EMILY C. HEWITT, Chief Judge.

Before the court is plaintiff's Complaint and Tort Claim for The Yisra'el Nation, (plaintiff's Complaint or Compl.), filed by The Yisra'el Nation (plaintiff), pro se, on June 16, 2011. Compl., Docket Number 1, at 1. The Complaint identifies Keith Edward Livingway (Mr. Livingway) as the Secretary of State for The Yisra'el Nation. Compl., Copyrighted Declaration of Independent State Status called The Yisra'el Nation

---

1. The second page of the Complaint is signed by christopher-david, Compl. 2, Docket Number (Dkt. No.) 1, Treasurer for The Yisra'el Nation, *id.; see also* Compl., Copyrighted Declaration of Independent State Status called The Yisra'el Nation 20.

2. Although defendant filed a Notice of Appearance, Dkt. No. 3, the court did not request briefing from defendant and is acting sua sponte.

(Decl.) 17.[3] In "an exercise [of] self determination," Mr. Livingway signed a constitution and a declaration of independence for The Yisra'el Nation on September 17, 2010.[4] Compl., Report number 003 at 1; see also Compl., Notice of Revocation 2. The Yisra'el Nation was allegedly "created as a neutral and non-combatant Independent State," Compl., Decl. 2; see also Compl., Summary of International Incident 101220–000071 (Incident Summary) 1, "to restore the original Republic to its former Glory," Compl., Articles of Confederation 1. For the following reasons, the court DISMISSES plaintiff's Complaint sua sponte.

## I. Background

The Complaint alleges that, "[a]fter multiple times of notifying [the] U.S. Department of State of torts committed by the COMMONWEALTH OF KENTUCKY, COUNTY OF SHELBY," the United States has failed to uphold, inter alia, Article 1 of the Covenant on Civil and Political Rights and the Vienna Convention on Diplomatic Relations. Compl. 1; see Compl., Bill for Damages (referring to "[t]he multiple breaches of the peace, trespasses, kidnappings and extortions" by the "COMMONWEALTH OF KENTUCKY, COUNTY OF SHELBY"). According to the Complaint, "These failures to uphold were done indirectly by special committee of the executive branch of the United States through its political subdivisions." Compl. 2. The Complaint further alleges that "[t]he Yisra'el Nation has spent 6 months time dealing with International Incident number 101220–000071, and 4.8 million coubits … will allow The Yisra'el Nation to recoup its losses where we should have been enjoying non-combatant immunity." Id.; see Compl., Decl. for Currency (stating that the currency for The Yisra'el Nation, which purports to be equal in value to the U.S. dollar, "shall bear the name 'coubit'").

According to the Incident Summary, a Kentucky State trooper arrested Mr. Living-way for driving without a license and driving with a suspended driver's license. Compl., Incident Summary 1. The Incident Summary contends that Mr. Livingway "spent three days in a state of physical kidnap and remains in administrative kidnapped [sic] by th[e] COMMONWEALTH OF KENTUCKY in conspiracy with Shelby County." Id. at 2.

The Incident Summary further claims that a hearing was held before Shelby District Judge Linda Armstrong on May 10, 2011. Id. at 3; see Compl., Sentinel–News (Shelbyville, Kentucky) Article 2 (indicating that Judge Linda Armstrong is a Shelby District Judge). Mr. Livingway was allegedly allowed thirty days to show he has diplomatic immunity as the Secretary for The Yisra'el Nation. Compl., Incident Summary 3; see Compl., Decl. 1 ("Judge Armstrong asked [Mr. Livingway] to retrieve a letter from the U.S. Department of State proving that [he] has Diplomatic Immunity.").

The Bill for Damages, which "is against the FEDERAL STATE called COMMONWEALTH OF KENTUCKY, COUNTY OF SHELBY," divides the 4.8 million coubits damages request into the following categories: (1) 900,000 coubits for violation of the Vienna Convention on Diplomatic Relations, Compl., Bill for Damages 1; see Compl., Notice of Treaty Violation and Tort Claim 1(referring to the Vienna Convention on Diplomatic Relations as "Treaty"); (2) 2,100,000 coubits for extortion; (3) 1,500,000 coubits for administrative and physical kidnapping; and (4) 300,000 coubits for libel, Compl., Bill for Damages 1. The Bill for Damages states that "The FEDERAL STATE COMMONWEALTH OF KENTUCKY, COUNTY OF SHELBY has thirty (30) days to transfer said liquidated funds to the U.S. Court of Federal Claims." Id.

## II. Legal Standards

### A. Dismissal for Lack of Subject Matter Jurisdiction

■ "Subject-matter jurisdiction may be challenged at any time by the parties or by

---

**3.** The documents attached to plaintiff's Complaint are not consecutively paginated. The court cites to these documents as they are titled in the Table of Contents, which is located on the sixth page of the Complaint. Compl. 6.

**4.** According to the Sentinel–News, The Yisra'el Nation occupies 1.7 acres of land in Shelby County, Kentucky. Compl., Sentinel–News (Shelbyville, Kentucky) Article 1.

the court sua sponte." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004) (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998)); *see also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1369 (Fed.Cir.2004) ("Subject matter jurisdiction is an inquiry that this court must raise sua sponte, even where, as here, neither party has raised this issue.") (citations omitted). "In deciding whether there is subject-matter jurisdiction, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." *Folden*, 379 F.3d at 1354 (internal quotation omitted).

Complaints filed by pro se plaintiffs are often held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see Vaizburd v. United States*, 384 F.3d 1278, 1285 n. 8 (Fed. Cir.2004) (stating that pleadings drafted by pro se parties "should ... not be held to the same standard as [pleadings drafted by] parties represented by counsel") (citation omitted). However, pro se plaintiffs must still meet jurisdictional requirements. *Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 Fed.Appx. 860 (Fed.Cir.2004) (unpublished); *see also Kelley v. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not

similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Rules of the United States Court of Federal Claims (RCFC) 12(h)(3).

### III. Discussion

For the following reasons, plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(h)(3). The court also finds that transfer of plaintiff's case to another federal court is not appropriate.

### A. The Court Does Not Have Jurisdiction over Plaintiff's Claims

■ Plaintiff's Complaint alleges that the United States Court of Federal Claims (Court of Federal Claims) has jurisdiction over its claim pursuant to "the Alien [T]ort Claims Act, where the Yisra'el Nation seeks damages for breaches of contracts with the United States." [5] Compl. 1. The Alien Tort Claims Act provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty

---

5. Plaintiff's request for "damages for breaches of contracts with the United States" and plaintiff's claim that "[t]he United States failed to uphold the general post office contract that is inherent with all people of all Nations," Compl. 1, are the only discernable references to contractual claims against the United States in plaintiff's ninety-five page Complaint, *see generally id.* Plaintiff has not identified or attached any of the alleged contracts, *see generally id.*, nor has plaintiff met the requirements of Rule 9(k) of the Rules of the United States Court of Federal Claims (RCFC): "In pleading a claim founded on a contract ..., a party must identify the substantive provisions of the contract ... on which the party relies," RCFC 9(k); *see also Mendez–Cardenas v. United States*, 88 Fed.Cl. 162, 168 (2009) (finding that the court lacks jurisdiction to hear plaintiff's contract claim because plaintiff "failed adequately to plead a contract claim under RCFC 9(k)").

In *Adair v. United States*, 497 F.3d 1244, 1251 (Fed.Cir.2007), the United States Court of Appeals for the Federal Circuit (Federal Circuit) addressed the circumstances in which the court should apply RCFC 12(b)(1) and RCFC 12(b)(6) in the context of the court's Tucker Act jurisdiction:

> If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1). If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

While the Federal Circuit in *Adair* was analyzing whether or not a statute was money mandating, the court views its analysis as applicable as well to determining the money-mandating status of a contract. *See Holmes v. United States*, 92 Fed.Cl. 311, 316 (2010) ("[T]he Federal Circuit's *Adair* analysis of a source to determine whether or not it is money-mandating appears to the court to be applicable as well to the analysis of whether [two settlement agreements are] money-mandating under the Tucker Act.").

Plaintiff's Complaint does not state a claim involving a substantive right to money damages under an "express or implied contract with the United States." *See* 28 U.S.C. § 1491(a)(1). Accordingly, the court lacks jurisdiction to hear plaintiff's alleged contract claims.

of the United States." 28 U.S.C. § 1350 (2006).

▮ The Court of Federal Claims is not a "district court" and therefore does not have jurisdiction of cases under the Alien Tort Claims Act. *See* 28 U.S.C. § 132 (defining "district court"). Instead, the Tucker Act provides that the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act itself does not create a substantive cause of action; ... to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc) (citing *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). "Therefore, in order to pursue a substantive right within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages." *Rueda–Rojas v. United States*, 98 Fed.Cl. 671, 676–77 (2011).

Because plaintiff has failed to "identify a separate source of substantive law that creates the right to money damages," *see Fisher*, 402 F.3d at 1172, plaintiff's claim does not fall under "the jurisdictional reach and the waiver of the Tucker Act," *see id.* The first page of plaintiff's Complaint charges the United States with failure to uphold "Article 1 of the Covenant on Civil and Political Rights," "the general post office contract that is inherent with all people of all Nations," the Vienna Conventions on Diplomatic Relations and Road Travels, head of state immunity and "The Law of Nations and International Law dealing with State's rights," Compl. 1, none of which provides a substantive right to money damages.

▮ Further, plaintiff's Bill for Damages categorizes the damages in terms of a "Trea-ty Violation" and acts of extortion, kidnapping and libel. Compl., Bill for Damages 1. With respect to the purported "Treaty Violation," "Except as otherwise provided by Act of Congress," the Court of Federal Claims lacks jurisdiction over any claim "against the United States growing out of or dependent upon any treaty entered into with foreign nations." 28 U.S.C. § 1502. In addition, the alleged acts of extortion, kidnapping and libel sound in tort, and this court lacks jurisdiction over tort claims. *See* 28 U.S.C. § 1491(a)(1).

▮ Moreover, although the first page of plaintiff's Complaint indicates that plaintiff's claim is against the United States, *see* Compl. 1 (claiming that the United States has failed to uphold, inter alia, the Covenant on Civil and Political Rights and the Vienna Convention), plaintiff's Bill for Damages is directed "against the FEDERAL STATE called COMMONWEALTH OF KENTUCKY, COUNTY OF SHELBY" and directs "[t]he FEDERAL STATE COMMONWEALTH OF KENTUCKY, COUNTY OF SHELBY" to deposit the damages with the Court of Federal Claims, Compl., Bill of Damages 1. However, the Court of Federal Claims has "jurisdiction to render judgment upon any claim *against the United States*," 28 U.S.C. § 1491(a)(1) (emphasis added), not, as sought here, a claim against a state.

For the foregoing reasons, plaintiff's Complaint must be dismissed pursuant to RCFC 12(h)(3) for lack of subject matter jurisdiction. *See* RCFC 12(h)(3).

**B. Transfer of the Case to Another Court Is Not Appropriate**

▮ The court considers whether "it is in the interest of justice" to transfer plaintiff's Complaint to another court of the United States under 28 U.S.C. § 1631. *See Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374–75 (Fed.Cir.2005) (stating that the Court of Federal Claims should have considered whether transfer was appropriate once the court determined that it lacked jurisdiction). Section 1631 states in pertinent part:

Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ...

to any other such court in which the action ... could have been brought at the time it was filed or noticed....

28 U.S.C. § 1631; *see* 28 U.S.C. § 610 (defining courts as "courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade"). "The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States,* 834 F.2d 998, 1000 (Fed.Cir.1987) (citation omitted) (stating that "[f]rivolous claims include spurious and specious arguments" (internal quotations omitted)); *see Zinger Constr. Co. v. United States,* 753 F.2d 1053, 1055 (Fed. Cir.1985). "A decision to transfer rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Spencer v. United States,* 98 Fed.Cl. 349, 359 (2011) (quoting *Faulkner v. United States,* 43 Fed.Cl. 54, 56 (1999)) (internal quotation marks omitted).

In the Complaint, plaintiff claims that this court has jurisdiction under the Alien Tort Claims Act, Compl. 1; however, as the court explained above in Part III.A, jurisdiction of claims under the Alien Tort Claims Act lies in the district court. The court has carefully reviewed the factual allegations in plaintiff's Complaint, and, in the court's view, "transfer would ... be futile given the weakness of plaintiff's case on the merits." *See Spencer,* 98 Fed.Cl. at 359. For the foregoing reasons, the court finds that it is not "in the interest of justice" to transfer this case to another court. *See* 28 U.S.C. § 1631.

IV.   Conclusion

The Clerk of Court is directed to DISMISS plaintiff's Complaint for lack of jurisdiction.

IT IS SO ORDERED.