**Robert A. MUNOZ, Petitioner,**

v.

**SOCIAL SECURITY ADMINISTRATION, Respondent.**

No. 03–3053.

United States Court of Appeals, Federal Circuit.

DECIDED: April 2, 2004.

Senior Circuit Judge, Archer, concurred in the result.

Dale L. Ingram, Jolley, Walsh, Kansas City, MO, for Petitioner.

Domenique Kirchner, Mark A. Melnick, David M. Cohen, Washington, DC, for Respondent.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and PROST, Circuit Judge.

Opinion for the court filed PER CURIAM. *Senior Circuit Judge* ARCHER concurs in the result.

PER CURIAM.

Robert Munoz appeals the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. CH0432000183–C–1, 92 M.S.P.R. 537, denying Mr. Munoz's petition for enforcement of a settlement agreement he entered into with the Social Security Administration (SSA). The MSPB held that the SSA did not breach the agreement when it disclosed information related to the agreement to the Office of Personnel Management (OPM). We conclude that the MSPB erred in its interpretation of the agreement, and that the SSA's disclosure to OPM was a breach of its terms. The decision of the MSPB is *reversed.* We *remand* for determination of remedy for the breach.

## BACKGROUND

Mr. Munoz was employed by the Social Security Administration as a Benefit Authorizer Trainee. He and two other Benefit Authorizer Trainees were removed by the SSA for unacceptable performance as defined in 5 U.S.C. § 4301(3). Each employee appealed to the MSPB. The first appeal to be decided was that of George Harris, wherein the MSPB ruled that the SSA did not establish performance standards, as was required by 5 C.F.R. § 432.103(h), and did not inform Harris of the critical elements of his position, as was also required. The MSPB reversed the removal. *Harris v. Social Security Administration,* Docket No. CH0432000067–I–1 (M.S.P.B. Feb. 8, 2000). When the SSA proposed settlement of the other two appeals, the SSA Chief Counsel wrote to the attorney representing Mr. Munoz and the third employee that "[t]he Agency is aware that there is a substantial likelihood that your clients will prevail in the administrative hearing" based on the *Harris* precedent.

Thereafter, Mr. Munoz and the SSA entered into a settlement agreement. Mr. Munoz agreed to withdraw his appeal with prejudice, and the SSA agreed to replace the Notice of Removal with a voluntary resignation and to pay Mr. Munoz $52,500. Both sides agreed to keep confidential the settlement agreement and all matters discussed during the settlement negotiations, except for disclosure to "officials who have a need to know to perform their official duties" or as required by law. The following agreement clauses recite these terms:

a. In return for Mr. Munoz's agreement to withdraw with prejudice his appeal to the MSPB and not to appeal his removal in any other forum, the Agency will withdraw the Notification of Personnel Action, Removal dated November 4, 1999, and will instead allow Mr. Munoz to voluntarily resign his position. Mr. Munoz's Standard Form–50 will not state or make reference to his October 5, 1999, removal.

g. This settlement agreement and all matters discussed during the settlement negotiations shall be kept confidential by Mr. Munoz, his attorney, the Agency, and the Agency's representatives. The Agency is authorized to disclose the agreement to officials who have a need to know to perform their official duties and to other entities to the extent required by Federal statute or regulation.

Mr. Munoz then resigned from his position, and the SSA replaced the personnel form showing removal for unacceptable performance with one that showed voluntary resignation.

In April 2001 Mr. Munoz applied for employment with the SSA as a Social Insurance Specialist (Claims Representative). He cited his past experience and veterans preference. OPM placed his name on the list of eligible candidates. The following month, the SSA notified the OPM that it objected to Mr. Munoz's inclusion on the list of eligible candidates, stating:

[Mr. Munoz] was removed from his position as a Benefit Authorizer Trainee under Chapter 43 due to his failure to perform the critical elements of the job. The eligible appealed his removal to the Merit Systems Protection Board and the case was settled with the Agency. Based on his prior service as a Benefit Authorizer Trainee the Agency does not believe that the eligible could perform the duties of a more complex Claims Representative position.

The agency also told OPM of the critical elements that Mr. Munoz had not satisfactorily performed and the various perform-

ance improvement plans that he failed, as well as of the settlement agreement allowing him to resign. As a result, OPM removed Mr. Munoz's name from the list of eligible candidates. On Mr. Munoz's petition, the MSPB held that the settlement agreement had not been breached by the SSA's disclosures. This appeal followed.

## DISCUSSION

The decision of the MSPB must be upheld unless it is determined to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000). The interpretation of a settlement agreement is given plenary review, as a matter of law. *Mays v. United States Postal Serv.,* 995 F.2d 1056, 1059 (Fed.Cir.1993).

The issue is focused on whether the settlement agreement permits the SSA to disclose Mr. Munoz's past performance, the removal, the settlement, and its terms. Mr. Munoz states that the intent of the settlement was to give him a clean record; the SSA states that the intent was simply to replace the removal form with a resignation form, but not to prohibit the disclosures that were made. The issue turns on the intent of the parties when they entered into the contract as reflected in the contract terms, and, if there is any ambiguity in the contract language, with recourse to any other evidence that may be relevant to contract interpretation. *Greco v. Dep't of the Army,* 852 F.2d 558, 560 (Fed.Cir. 1988).

The settlement agreement provided that Mr. Munoz would resign, that the record would show voluntary departure rather than removal for cause, and that the settlement and its negotiations would be kept in confidence but for the specified exceptions.

The SSA argues that its obligation was met when it replaced the SF–50 that showed removal for cause with the SF–50 showing voluntary resignation. The SSA states that its disclosure of the removal, the reasons therefor, the appeal, and its settlement, did not violate the settlement agreement.

The SSA points to an earlier draft of the agreement, which specified how the agency would respond to inquiries:

D. The Agency will respond to any inquiries from prospective employers regarding the Employee's tenure with the Agency. In response to any inquiry, the Agency will disclose verbally only the dates of the Employee's employment with the Agency, his position titles, grades, and salaries.

The SSA argues that since this clause was not included in the final agreement, it was not intended that the agency would be limited in its disclosures concerning the employee. However, as a matter of contract interpretation, an omitted draft clause cannot contradict an included final clause. We also take note that the omitted clause relates only to "verbal" disclosure. In contrast, the contractual provision of confidentiality of "all matters discussed during the settlement negotiations" as well as of the agreement itself, reasonably interpreted, includes the matter of Mr. Munoz's removal and its settlement.

The settlement agreement states that the notice of removal for asserted performance inadequacies would be withdrawn. Withdrawal of a notice, and replacement with a different notice, is as if the original notice was not given. *See, e.g., Conant v. OPM,* 255 F.3d 1371, 1376 (Fed.Cir.2001) ("By agreeing to 'rescind' the SF–50, the IRS promised in effect to destroy it, erasing 'removal' and all reasons for such a removal from Ms. Conant's professional

record with the agency."). The SSA's agreement to replace the Notice of Removal and not to disclose the agreement and anything discussed during the settlement negotiations leaves no room for the SSA's disclosure of the removal and the settlement.

The SSA does not dispute that it disclosed this information in order to exclude Mr. Munoz from a similar position with the SSA. However, the SSA argues that these disclosures did not breach the confidentiality provisions because the agreement authorizes disclosure of "the agreement" to "officials who have a need to know to perform their official duties...." The SSA states that OPM had a "need to know" of Mr. Munoz's inadequate performance in order to perform its duty of selecting candidates for employment. Mr. Munoz states that the "need to know" provision related only to such limited need to know as was necessary to carry out the terms of the settlement agreement. He points out that this clause, as originally drafted, authorized disclosure of "the terms of the agreement," while the final clause authorized only disclosure of "the agreement," showing that disclosure was understood to be limited. He points out that only the agreement, and not his performance, is authorized to be disclosed. He also points out that the adequacy of his performance was never adjudicated, and thus that it was incorrect to criticize his performance.

The administrative judge ruled that the agreement did not preclude the SSA "from advising OPM of its experience with his past performance," and held that the agreement was not breached by any of the agency's disclosures to OPM. On Mr. Munoz's appeal to the full Board, the two members who then constituted the Board (the third position was vacant) split on the disposition, leaving the AJ's decision as

final. Board Member Slavet, writing separately in dissent from the AJ's ruling, presented the view that the agency was not precluded from describing Mr. Munoz's inadequate performance in critical elements that were common to his past position and the one for which he was applying, but that the agency exceeded this limited ability. She stated:

To the extent that the agency wanted to rely on the appellant's prior performance in the Benefit Authorizer Trainee position as the basis for its objection to the appellant's inclusion on the certificate of eligibles for the Social Insurance Specialist position, the agency could have provided other evidence to establish that the appellant's performance under particular critical elements of his prior position was deficient. For example, the agency could have submitted statements from the appellant's former supervisors and/or copies of the appellant's position description and performance improvement plan.

Member Slavet concluded that the removal and the settlement were required to be kept in confidence, and that their disclosure to OPM was a material breach of the agreement. Member Slavet found that the SSA did not show that OPM had a need to know about the rescinded removal and the settlement terms in order to rule on the SSA's objection to Mr. Munoz's qualifications. Member Slavet concluded that the conditions of confidentiality were material to the agreement and that their violation was a material breach, citing *Mullins v. Dep't of the Air Force*, 79 M.S.P.R. 206, ¶ 10 (1998) ("The Board has viewed the violation of nondisclosure provisions in settlement agreements seriously, because condoning such violations would have a chilling effect on attempts to settle appeals by providing appellants with clean records and neutral or positive employment references."). We agree with Member Slavet,

and conclude that the SSA exceeded the permissible scope of disclosure as set forth in the parties' agreement. The SSA has not shown that OPM had a need to know about the removal and settlement agreement.

The SSA presents the alternative argument that even if its actions did constitute a breach of the agreement, the breach was not material. Mr. Munoz responds that the breach went to the essence of the agreement, for the disclosure precluded consideration of his application for employment. Clearly the breach was material.

### Conclusion

The SSA's disclosures breached the obligations set forth in the settlement agreement. We reverse the Board's decision, and remand for determination of an appropriate remedy.