**SYSTEM PLANNING CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

**No. 07–678 C.**

United States Court of Federal Claims.

July 12, 2012.

■

---

F. Whitten Peters, Washington, DC, for plaintiff. Mark S. Levinstein, Thomas M.

Craig, and Jared L. Hubbard, Washington, DC, of counsel.

Michael P. Goodman, Trial Attorney, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

### OPINION and ORDER

HEWITT, Chief Judge.

Plaintiff, System Planning Corporation (SPC), brings this suit under the Contract Disputes Act (CDA),[1] claiming that the United States Air Force (USAF, defendant or the government) breached a contract with plaintiff in which plaintiff agreed to provide an Advanced Entry Control System (AECS) to control access to USAF facilities. First Am. Compl. (Compl.), Docket Number (Dkt. No.) 42, ¶¶ 3–4. In plaintiff's view, a portion of an option clause contained in the contract required the government to pay a negotiated fee of over $7 million either "(a) if the Government modifies or adapts the AECS software or hardware or (b) if the Government installs or operates the AECS software or hardware at any installations that were not installed and licensed to operate by SPC." Id. ¶ 8. Because the contract language upon which plaintiff relies is contained within an option clause that was never exercised by the government, defendant's motion for summary judgment must be GRANTED and SPC's cross-motion for summary judgment must be DENIED.

Before the court are Defendant's Motion for Summary Judgment (Def.'s Mot.), Dkt. No. 51, filed February 25, 2011; Defendant's Proposed Findings of Uncontroverted Fact (Def.'s PFUF), Dkt. No. 52, filed February 25, 2011; Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross–Motion for Summary Judgment with Respect to Liability on All Counts and Damages on Count 1 (Pl.'s Mot.), Dkt. No. 80, filed March 16, 2012; Plaintiff System Planning Corporation's Proposed Findings of Material Fact as to Which There Is No Genuine Dispute and Response to the Government's Proposed Findings (Pl.'s PFUF), Dkt. No. 81, filed March 16, 2012; Defendant's Reply in Support of Motion for Summary Judgment and Response to Cross–Motion for Summary Judgment (Def.'s Reply), Dkt. No. 88, filed May 15, 2012; and Plaintiff's Reply in Support of Its Cross–Motion for Summary Judgment With Respect to Liability on All Counts and Damages on Count 1 (Pl.'s Reply), Dkt. No. 91, filed June 1, 2012.

The court held oral argument on the parties' cross-motions at the Howard T. Markey National Courts Building in Washington, DC on June 20, 2012.[2]

### I. Background

On or about March 11, 1993 SPC entered into Contract No. F19628–92–D–0011(the original contract) with the USAF to design and provide a new security system capable of protecting USAF facilities. Compl. ¶ 4; see also Def.'s PFUF ¶¶ 1–2; Pl.'s PFUF ¶¶ 1–2. The Advanced Entry Control System (AECS) was "to provide effective control of entry, exit, and internal movement of personnel, material and vehicles through established entry control points and within restricted areas containing classified, high value or critical national defense resources." Pl.'s Mot. Ex. 2 (Contract) SPC–000217.

The contract contained an option provision, Contract Line Item Number (CLIN) 0011, labeled "S/W RIGHTS" (original contract option). The "[e]ffort" required of SPC under the original contract option was "described in Section H.9 of [the original] contract." Id. at SPC–000007. The cost of the original con-

1. Congress recently amended the Contract Disputes Act (CDA) and enacted it into positive law. See Act of Jan. 4, 2011, Pub.L. No. 111–350, 124 Stat. 3677 (the CDA amendment). The only effect of the CDA amendment as it relates to this case is the relocation of the provisions of the CDA from 41 U.S.C. §§ 601–13 (2006) to 41 U.S.C. §§ 7101–09. See id. §§ 7101–09.

2. The oral argument held on Wednesday, June 20, 2012 was recorded by the court's Electronic Digital Recording (EDR) system. The times noted in citations to the oral argument refer to the EDR record of the oral argument.

tract option stated in the original contract was "$820,000, if option exercised." *Id.*

Section H.9, the section referenced in the original contract as describing the "effort" associated with the original contract option, states:

> 9. *COMPUTER SOFTWARE DATA RIGHTS*
>
> Should the contractor be in danger of default, in a nonperformance posture under this contract, or discontinue the AECS software line after the system is installed at one or more bases, the Government may exercise the contract option to buy limited software data rights. This contract option is to ensure all installed sites are logistically supportable throughout the life cycle of the system. Should this option be exercised, the Government claims the following rights in addition to any other rights granted under federal statute or regulation. The computer software may be modified or adapted by the Government to support the system over it[ ]s life cycle provided that the additional, negotiated fee[ ] is paid for the software source code.
>
> The Government may not install or operate the software at any additional installations, other than those installed, and licensed to operate by the original contractor.

*Id.* at SPC–000183.

On or about October 21, 1997 the parties entered into a Supplemental Agreement that made, among other changes, changes to the original contract option. *Id.* at Ex. 3 (Supplemental Agreement) SPC 04128. The Supplemental Agreement describes the change made to the original contract option as follows:

> CLIN noun was changed to reflect inclusion of propriety H/W [hardware] in clause H.9. CLIN price has been increased from $820,000 to $7,039,870. CLIN 0011 was increased by $6,219,870 because the S/W [software] Rights Clause (H.9) was expanded to include the S/W development tools and proprietary H/W. Also, the "EXERCISE OPTION" paragraph has been

included. It was inadvertently omitted in the last contract modification.[3]

*Id.* at SPC 04129 (footnote added). Paragraph L of Section B of the Supplemental Agreement states that "[a]ll work, under [option CLIN 0011], will be purchased by issuance of a Delivery Order to the Contractor. The referenced CLIN is a[ ] [Firm Fixed Price (FFP) ] Option CLIN. The Government reserves the right to exercise this CLIN at the price specified, at any time during the life of the Contract." *Id.* at SPC 04144.

CLIN 0011 in the Supplemental Agreement states, as does CLIN 0011 in the original contract, "Effort as described in Section H.9 of contract," but CLIN 0011 in the Supplemental Agreement was modified to provide that "[t]his effort will be at a FFP of $7,039,870 if option exercised." *Id.* at SPC 04138. The note at the bottom of the same page regarding the exercise of options states that CLIN 0011 must be exercised "[n]o later than 60 days after final delivery of CLIN 0008." *Id.* CLIN 0008 refers to the AECS equipment. *Id.* at SPC 04137.

The final version of Section H.9 appearing in the Supplemental Agreement provides:

> 9. *COMPUTER SOFTWARE AND HARDWARE DATA RIGHTS*
>
> In the event the contractor is in danger of default, in a nonperformance posture under this contract (as determined by the Government), or discontinue[s] the AECS product line, after the system is installed at one or more bases, the Government may exercise the contract option to buy limited software and hardware data rights to the AECS software and hardware. This contract option is to ensure all installed sites are logistically supportable throughout the life cycle of the system. The Government may not install or operate the software and proprietary hardware at any additional installations, other than those installed, and licensed to operate by the original contractor. Should this option be exercised, the Government claims the following rights in addition to any other rights granted under

---

**3.** Although the Supplemental Agreement appears to describe an additional contract modification, no intermediate modifications occurring between

the original contract and the Supplemental Agreement were provided to the court.

federal statute or regulation. The software and hardware may be modified or adapted by the Government to support the system over it[ ]s life cycle provided that the additional, negotiated fee[ ] is paid for the software source code. In support of this clause the contractor shall place the following in escrow:

a. All prime and subcontractor owned software and firmware in accordance with [Contract Data Requirement List (CDRL) ], A007.

b. All documentation and development tools described in CDRL A014.

c. All drawings and documentation required to manufacture, fabricate, repair, and test all Linx components, circuits, modules, etc.

The contractor shall make available, for Government review and approval at the contractor facility, all items to be placed in escrow no later than 90 days after completion of [the Functional Configuration Audit/Physical Configuration Audit (FCA/PCA) ]. Further, the contractor shall update/replace the items contained in escrow whenever the AECS product line is modified.

*Id.* at SPC 04200. The foregoing version of Section H.9 in the Supplemental Agreement is referred to as the option.

SPC proceeded to develop the software and hardware necessary for the AECS system with the assistance of subcontractors, including Mosler, Inc. (Mosler). *See* Pl.'s PFUF ¶ 4; Pl.'s Mot. 12. SPC installed the AECS system at three locations: Eglin Air Force Base in Florida, Minot Air Force Base in North Dakota, and Kirtland Air Force Base in New Mexico. Pl.'s PFUF ¶ 7 (citing Pl.'s Mot. Ex. 6 (U.S. Interrogatory Responses) 2–3).

On or about March 16, 2000 the USAF entered into a contract (No. F19628–00–M–0023) with Mosler, SPC's subcontractor,[4] "to provide [Contractor Logistics Support (CLS) ] for Minot" Air Force Base for the AECS system. Def.'s Mot. Ex. 5 (USAF–Mosler Contract) 1–2. On or about April 4, 2000 the government advised Mosler that the USAF intended to modify (effective April 4, 2000) the "Mosler CLS contract, F19628–00–M–0023" to make certain software changes to the AECS system installed at Minot Air Force Base. Pl.'s Mot. Ex. 18 (Mosler Quote) SPC–7980; *cf. id.* at SPC–7978 (providing Mosler's quotation in response to the government's notification). On or before April 12, 2000, System Planning had been notified by the USAF that Mosler was making modifications to the AECS software at Minot Air Force Base. *See id.* at Ex. 4 (April 12, 2000 email from CO to Suzann Riester) SPC 7933.

On or about June 30, 2000 the final SPC AECS delivery order expired. *Id.* at Ex. 19 (USAF Monthly Acquisition Report, June 2000) 15588. At some point in 2000 Mosler filed for bankruptcy and Diebold, Inc. (Diebold) assumed certain of Mosler's assets and, in a February 2002 novation agreement, replaced Mosler on Mosler's contracts with the United States government. Def.'s Mot. Ex. 6 (Diebold Novation); *see also* Def.'s PFUF ¶ 21. Diebold provided a version[5] of the

**4.** The parties agree that this contract was awarded pursuant to a sole source procurement. *See* Def.'s Mot. for Summ. J. (Def.'s Mot.), Dkt. No. 51, at 6; Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Cross–Mot. for Summ. J. with Respect to Liability on All Counts and Damages on Count 1 (Pl.'s Mot.), Dkt. No. 80, at 3–4. Plaintiff repeatedly alleges that this procurement was improperly conducted, stating that it was conducted against the advice of the contracting officer and that money was moved to a particular air force base for the procurement to be conducted there. *See, e.g.,* Pl.'s Mot. 3–4, 18, 22–23, 41. While this issue may have been a proper subject for a bid protest, *see* 28 U.S.C. § 1491(b)(1) (2006) (providing the United States Court of Federal Claims with jurisdiction "to render judgment on an action by an interested party object-

ing to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with ‚a procurement or a proposed procurement"), it does not assist the court in resolving the contract interpretation question in this suit.

**5.** The parties dispute the extent to which the Advanced Entry Control System (AECS) provided by Diebold, Inc. (Diebold) was similar or identical to plaintiff's AECS software and hardware installed at Eglin Air Force Base, Minot Air Force Base, and Kirtland Air Force Base. *See* Pl.'s Mot. 24–29; Def.'s Mot. 10; Def.'s Reply in Supp. of Mot. for Summ. J. and Resp. to Cross–Mot. for Summ. J. (Def.'s Reply), Dkt. No. 88, at

AECS at multiple additional USAF facilities (the additional bases).[6] Pl.'s Mot. Ex. 6 (U.S. Interrogatory Responses) 3–4.

On or about August 3, 2000 SPC notified the United States that it believed that Mosler's modification of the AECS software "trigger[ed] the requirement in Section H.9 of the contract to pay the additional, negotiated fee ($7,039,870)" and, on or about September 8, 2000, SPC submitted an invoice in that amount. Compl. ¶ 14; *see also* Def.'s PFUF ¶ 15; Pl.'s PFUF ¶ 21. On or about September 21, 2000 the USAF communicated to SPC its view that it had not exercised the option and on that basis declined to pay the invoice for $7,039,870 submitted by SPC. Compl. ¶ 20; *see also* Def.'s PFUF ¶ 16; Pl.'s PFUF ¶ 26. Then, on or about October 9, 2000, SPC submitted a certified claim to the Contracting Officer (CO) responsible for the contract. Compl. ¶ 21; *see also* Def.'s PFUF ¶ 17; Pl.'s PFUF ¶ 27. On September 18, 2007, after waiting nearly seven years for the CO to issue a final decision on the claim, SPC deemed its claim denied and filed this case pursuant to the CDA. *See* Compl. ¶¶ 3, 23, 29.

The United States initially contended that the court must dismiss SPC's Complaint for failing to comply with the six-year statute of limitations set forth in 28 U.S.C. § 2501 (2006). *Sys. Planning Corp. v. United States (System Planning I)*, 95 Fed.Cl. 1, 2

(2010). The court determined in *System Planning I* that, because the CO did not issue a decision within a reasonable time, "SPC was authorized by 41 U.S.C. § 605(c)(5) and § 609(a)(1) to file this suit," and that once SPC elected to proceed under the CDA, "the Tucker Act's six-year statute of limitations [did] not apply." *Id.* at 4. The court held that "[b]ecause plaintiff filed its complaint pursuant to the 'deemed denial' provision, it has elected to proceed under the CDA and is not bound by the six-year limitations period in 28 U.S.C. § 2501." *Id.*

## II. Legal Standards

### A. Cross Motions for Summary Judgment

Under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC),[7] "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party has the initial burden of establishing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1366 (Fed.Cir.2001) (citing *Celotex Corp. v. Catrett (Celotex)*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).[8] The nonmoving party then bears the

---

2 n. 1. Whether these systems were, in fact, identical is not relevant under the court's analysis of liability in Part III. *See infra* Part III.

**6.** The additional bases include: Schriever Air Force Base in Colorado, Whiteman Air Force Base in Missouri, F.E. Warren Air Force Base in Wyoming, Malmstrom Air Force Base in Montana, Robins Air Force Base in Georgia and Offutt Air Force Base in Nebraska. Pl.'s Mot. Ex. 6 (U.S. Interrogatory Responses) 3–4. These installations occurred in and between 2003 and 2009. *See id.*

**7.** Effective July 15, 2011, the Rules of the United States Court of Federal Claims (RCFC) were amended, changing the language and structure of Rule 56 to "reflect the corresponding revision of [Federal Rule of Civil Procedure 56] that became effective December 1, 2010." RCFC 56 Rules Committee Note (2011). Defendant's motion for summary judgment was filed prior to July 15, 2011 and refers to the prior version of RCFC 56. Because RCFC 56 remains the same in substance, the court applies the current ver-

sion of RCFC 56. *See* RCFC 86 ("These rules and any subsequent amendments are applicable to all proceedings pending at the time of the adoption of the revision or amendment or thereafter filed, except to the extent that the court determines that their application to a pending action would not be feasible or would work injustice, in which event the former procedure applies.").

**8.** The RCFC generally mirror the Federal Rules of Civil Procedure (FRCP). *See* RCFC 56, Rules Committee Note (2008) ("The language of RCFC 56 has been amended to conform to the general restyling of the FRCP."); *Flowers v. United States*, 75 Fed.Cl. 615, 624 (2007) ("RCFC 56 is patterned on Rule 56 of the [FRCP] and is similar in language and effect."), *aff'd*, 321 Fed.Appx. 928 (Fed.Cir.2008) (unpublished); *Champagne v. United States*, 35 Fed.Cl. 198, 205 n. 5 (1996) ("In general, the rules of this court are closely patterned on the [FRCP]. Therefore, precedent under the [FRCP] is relevant to interpreting the rules of this court, including Rule 56."), *aff'd*,

burden of establishing, by a showing of specific facts, that there are genuine issues of material fact for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A fact is material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* In considering a motion for summary judgment, the court draws all inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Mann v. United States,* 334 F.3d 1048, 1050 (Fed. Cir.2003) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

### B. Contract Interpretation

"Interpretation of the clear and unambiguous language of a contract is a question of law that may be resolved by summary judgment." *CW Gov't Travel, Inc. v. United States,* 63 Fed.Cl. 369, 390 (2004) (citing *Beta Sys., Inc. v. United States (Beta Sys.),* 838 F.2d 1179, 1183 (Fed.Cir.1988)); *see also Varilease Tech. Grp., Inc. v. United States,* 289 F.3d 795, 798 (Fed.Cir.2002). In interpreting contractual language, the court must give reasonable meaning to all parts of the contract and avoid rendering portions of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed. Cir.1985). Contract provisions "should not be interpreted as conflicting with one another unless there is no other possible reasonable construction of the language." *Int'l Transducer Corp. v. United States,* 30 Fed. Cl. 522, 526 (1994) (citing *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965)), *aff'd,* 48 F.3d 1235 (Fed.Cir.1995) (Table).

Contract terms are to be accorded their plain and ordinary meaning, and "[w]herever possible, courts should look to the plain language of the contract to resolve any questions of contract interpretation." *Aleman*

*Food Servs., Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir.1993). "The language of a contract ... must be given the meaning that would be derived from the contract by a 'reasonably intelligent person acquainted with the contemporaneous circumstances.'" *Allied Tech. Grp., Inc. v. United States,* 39 Fed.Cl. 125, 138 (1997) (quoting *Hol–Gar Mfg. Corp.,* 169 Ct.Cl. at 388, 351 F.2d at 975), *aff'd,* 173 F.3d 435 (Fed.Cir.1998) (Table). The plain language of a contract is viewed as controlling and unambiguous if the language is amenable to only one reasonable interpretation. *Triax Pac., Inc. v. West,* 130 F.3d 1469, 1473 (Fed.Cir.1997).

Language that is reasonably susceptible to more than one interpretation, where "each [interpretation] ... is found to be consistent with the contract language," may be considered ambiguous. *Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir. 1993) (citations omitted). Although the parties' differing interpretations of contract terms do not necessarily create an ambiguity, *id.,* a contract will be considered ambiguous if "it sustains the interpretations advanced by both parties to the suit." *Pacificorp Capital, Inc. v. United States,* 25 Cl.Ct. 707, 716 (1992) (citing *Avedon Corp. v. United States,* 15 Cl.Ct. 771, 776 (1988)), *aff'd,* 988 F.2d 130 (Fed.Cir.1993) (Table). "To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution." *Beta Sys.,* 838 F.2d at 1183.

### III. Discussion

Plaintiff's case involves two basic contentions: that the government owes plaintiff money because the government modified the software that plaintiff installed, *see* Pl.'s Mot. 43–48; and that the government owes plaintiff money for contracting with companies other than plaintiff to install plaintiff's proprietary hardware and software at the additional bases, *see id.* at 29–31. The contract terms on which plaintiff relies to support its contention that it is entitled to payment for

---

136 F.3d 1300 (Fed.Cir.1998); *C. Sanchez & Son, Inc. v. United States,* 6 F.3d 1539, 1541 n. 2 (Fed.Cir.1993) ("The [RCFC] generally follow the [FRCP]. [RCFC] 56(c) is, in pertinent part, identi-

cal to [FRCP] 56(c)."). Therefore, this court relies on cases interpreting FRCP 56 as well as those interpreting RCFC 56.

both the software modification and installations at the additional bases appears in, and only in, Section H.9 of the Supplemental Agreement, the option. *Id.* at Ex. 3 (Supplemental Agreement) SPC 04200; *id.* at 29–30, 43–44. Plaintiff's theories of recovery for the modification and the installations at additional bases differ slightly. With respect to modification, plaintiff alleges that the government exercised the option and failed to pay. *See id.* at 43. With respect to installations at additional bases, plaintiff contends that the language it relies upon exists independently of the option. *See id.* at 29–43. Defendant contends as to both issues that plaintiff is not entitled to recovery because the option was never exercised and therefore was never breached. *See* Def.'s Mot. 9–11. The parties agree that these are contract interpretation questions appropriate for resolution on summary judgment. *See* Oral Argument of June 20, 2012, Argument of Mr. Thomas Craig at 9:34:55–59; Oral Argument of June 20, 2012, Argument of Mr. Michael Goodman at 9:35:07–12 (colloquy between defendant's counsel and the court).

For the following reasons, the court agrees with defendant that, because the option was never exercised by the government, plaintiff is not entitled to damages. Accordingly, the court must deny plaintiff's Motion and grant defendant's Motion.

A. Plaintiff Is Not Entitled to Recover on Its Theory that the Government Exercised the Option When Mosler Modified the Software and the Government So Notified Plaintiff

With respect to modification, plaintiff argues that "[t]he Government ... breached the Contract by exercising the option in § H.9, but then failing to pay SPC the agreed upon fee." Pl.'s Mot. 43. Under plaintiff's interpretation of the contract, Section H.9 gave the government the option to purchase the right to " 'modif[y] or adapt[ ]' " the software and hardware " 'to support the system over its life cycle provided that the additional, negotiated fee is paid for the software source code' " and, in the absence of exercising the option, the government had no right to modify the software. *Id.* (emphasis

omitted) (quoting Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200). According to plaintiff, once Mosler modified software that was originally installed under SPC's contract and the government notified plaintiff of the modification, the government exercised the option, with the result that the government owes plaintiff the contractual amount of $7,039,870. *See id.* at 44.

Defendant contends that the option was never exercised by the government and therefore plaintiff is not entitled to the fee of $7,039,870. *See* Def.'s Mot. 9. According to defendant, "As a matter of law, the exercise of an option by the Government must follow particular procedures, including that the exercise of an option be in exact accord with the terms of the contract as well as all relevant laws and regulations." *Id.; see also id.* at 11 (citing, inter alia, *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 323–24 (Fed.Cir.1997) and *Arko Exec. Servs., Inc. v. United States (Arko)*, 553 F.3d 1375, 1379 (Fed.Cir.2009) for the proposition that the government must exercise an option "in exact accord with the terms" of the option).

Relying on the option and on SPC's admissions, defendant contends that the option could not have been exercised because the government did not exercise the option in exact accord with the terms of the contract. None of the three conditions precedent to the exercise of the option occurred: SPC was never in danger of default; the government made no finding that SPC was " 'in a nonperformance posture under th[e] contract,' "; and SPC did not discontinue the AECS product line. Def.'s Mot. 15–17 (quoting Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200). The government also points to admissions by SPC that no government official ever specifically informed SPC that the government intended to exercise the option or issued a letter indicating the government's intent to exercise the option. *Id.* at 18; *see also id.* at Ex. 10 (SPC's Responses to Requests for Admission) 14, 17–18. Moreover, although CLIN 0011 states that all work under the option "will be purchased by issuance of a Delivery Order to the Contractor," plaintiff admits that it was never issued a delivery order referencing the option. *Id.* at

18; *see also id.* at Ex. 10 (SPC's Responses to Requests for Admission) 20.

Defendant also relies on FAR 17.207(a), which provides that " '[w]hen exercising an option, the contracting officer shall provide written notice to the contractor within the time period specified in the contract.' " *Id.* at 12 (quoting FAR 17.207(a) (1992)). Defendant states that no such written notice was issued. *Id.* at 18–19.

Plaintiff responds that the requirement that an option be exercised in "exact accord with the terms of the option" exists to protect the offeror. Pl.'s Mot. 44–45. According to plaintiff, "[b]y requesting payment for the Government's exercise of the option, SPC waived any conditions precedent to the Government's exercise of the option," and waived formal written notice. *Id.* at 46–47.

■ In general, an option provision in a government contract obligates the contractor to perform additional contract work if the government exercises the option, but does not create a legal obligation on the part of the government to exercise the option and require the work. *See Gov't Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 813 (Fed.Cir.1988); *LaSalle Partners v. United States,* 48 Fed.Cl. 797, 806 (2001) (stating same). "For an option order to be effective, the Government must exercise the option in exact accord with the terms of the contract." *Freightliner Corp. v. Caldera,* 225 F.3d 1361, 1366 (Fed.Cir.2000); *see also Arko,* 553 F.3d at 1379.

■ The relevant contract provisions and communications between the USAF and SPC make it clear that the contract option in Section H.9 simply was not exercised by the USAF. With respect to the text of the option provision itself, Section H.9 contemplates that the government may exercise the contract option when the contractor is in danger of default, in a nonperformance posture, or if it discontinues the AECS product after the system had been installed in at least one base. *See* Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200 ("In the event the contractor is in danger of default, in a nonperformance posture under this contract (as determined by the Government), or dis-

continue[s] the AECS product line, after the system is installed at one or more bases, the Government may exercise the contract option to buy limited software and hardware data rights to the AECS software and hardware."). SPC stated in an interrogatory response that, at all times during the performance of the contract, it "was solvent and capable of fulfilling its obligations" and therefore not in danger of default. *See* Def.'s Mot. Ex. 9 (SPC's Responses to Interrogatories) 13. SPC also admitted that "it was never formally informed by the Contracting Officer exercising authority over [the contract] that SPC was 'in danger of default.' " *Id.* at Ex. 10 (SPC's Admissions) 13. SPC also admitted that the CO "never specifically informed SPC using the words 'SPC you are in a nonperformance posture with respect to [the contract]' " that SPC was in a nonperformance posture under the contract. *Id.* In addition, SPC admitted that it discontinued the AECS product line only after the USAF "refused to allow SPC to continue to work on the AECS project, modified the software installed by SPC, and contracted with other companies," events which plaintiff argues constituted the government's exercise of the option and which therefore could not have constituted the discontinuance contemplated by Section H.9. *See id.* at 15–16. In summary, plaintiff admits that none of the conditions under which it was contemplated that the option would be exercised occurred.

The text of the relevant regulations regarding options requires the agency to "make a written determination for the contract file that exercise [of the option] is in accordance with the terms of the option, the requirements of this section, and [FAR] part 6." FAR § 17.207(f); *see also Magnum Opus Techs., Inc. v. United States,* 94 Fed.Cl. 512, 541 (2010). Part 17.207(a) of the FAR states that "[w]hen exercising an option, the contracting officer shall provide written notice to the contractor within the time period specified in the contract." FAR § 17.207(a). The option specifically required that CLIN 0011 "be purchased by issuance of a Delivery Order to the Contractor." Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04144. SPC never received a delivery order for the option, *see* Def.'s Mot. Ex. 10 (SPC's Admis-

sions) 20 (admitting that "SPC was never issued a Delivery Order referencing CLIN 0011 of Contract No. F19628–92–D–0011"), and was never notified in writing of the government's intent to exercise the option, see id. at 16–19.

Although no written notice was given that the USAF intended to exercise the option, plaintiff argues that "the Government stated orally and in writing that it would be exercising its right to modify or alter the AECS software." Pl.'s Mot. 47. Plaintiff refers, first, to a meeting held in early April 2000 in which plaintiff's representatives were informed by the USAF that changes would be made to the AECS software at Minot and that SPC would not be performing the changes. See Pl.'s Mot. Ex. 23 (Gibbons Declaration) 13–14. Plaintiff refers, second, to an e-mail dated April 12, 2000 from the CO to an SPC employee that stated that "Mosler changed the AECS linx software." See Pl.'s Mot. Ex. 4 (April 12, 2000 e-mail from CO to Suzann Riester) SPC 7933. According to plaintiff, the oral notification at the meeting, and the written notification in the e-mail, of the government's modification of the AECS system without plaintiff's involvement was sufficient to exercise the option. However, because an option must be exercised "in exact accord" with the terms of the contract, defendant's notification to plain-

tiff that the USAF intended to modify or had modified the software, where the option required the USAF to issue a delivery order and the regulations required the USAF to provide written notification of intent to exercise the option, was insufficient to exercise the option. See Int'l Tel. & Tel. v. United States, 197 Ct.Cl. 11, 16–18, 29, 453 F.2d 1283, 1286–87, 1293 (1972) (holding that where a contract required written notice before a specific date in order to exercise an option, notice by telegraph received the next day and orally by telephone on the last date to give notice was insufficient to exercise the option).

Plaintiff's argument that the conditions precedent to the exercise of the option and the requirements of a delivery order and a written expression of intent were designed to protect SPC and therefore could be waived by plaintiff, see Pl.'s Mot. 44–46, is unavailing. Plaintiff cites a treatise for the proposition that " '[n]othing less than an unconditional and precise acceptance will suffice [to exercise an option] unless the optioner waives one or more of the terms of the option.' " Id. at 46 (emphasis omitted) (quoting 1 Richard A. Lord, Williston on Contracts § 5:18 (4th ed. 2011)).[9]

■ However, case law makes clear that a contractor cannot—in all cases and at its sole option—waive conditions precedent to, and

---

**9.** Plaintiff also cites two decisions by the Comptroller General and a decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit). See Pl.'s Mot. 46–47. These cases, however, provide little support for plaintiff's assertion in the present case. In Independent Metal Strap Co., the Comptroller General concluded that, where the government attempted to exercise an option to extend three days before the expiration of a contract and where the contract required written notice to be issued sixty days before expiration, plaintiff could decline to accept the exercise of the option, but other contractors could choose to waive the sixty day notice provision and accept the agency's exercise of the option. See Indep. Metal Strap Co., B–231756, 1989 WL 241031 (Comp.Gen. Aug. 17, 1989). Ceredo Mortuary Chapel, Inc., B–232373.5, 1989 WL 240288 (Comp.Gen. Jan. 9, 1989) was similarly concerned with a situation in which the government attempted to exercise an option but did not give the full sixty days notice required by the contract. In both of these circumstances, it was clear that the government had attempted to exercise the option, and in such

circumstances the Comptroller General found it appropriate for the contractor, if it wished, to waive strict compliance with a sixty day notice provision.

Similarly, in Mabus v. General Dynamics C4 Systems, Inc., there was apparently no dispute that the government had attempted to exercise contract options. 633 F.3d 1356, 1358–59 (Fed. Cir.2011). Instead, the dispute centered on whether the contractor was required to fill delivery orders sent by e-mail where the terms of the contract required delivery orders to be submitted by mail but the contractor had previously accepted delivery orders by e-mail. Id. The Federal Circuit held that the contractor was equitably estopped, after filling at least thirteen delivery orders by e-mail, from asserting that the contract required delivery orders to be submitted by mail. Id. at 1363–64.

From these cases it is not at all clear that, where the United States has made no expression of intent to exercise an option, the contractor can attempt to waive all conditions precedent and notice requirements in order to bind the government to the provisions of the option.

the specified manner of, the exercise of an option in an attempt to bind the government to the option.

For example, in *Uniq Computer Corp. v. United States,* a contractor brought suit alleging that a notice of the government's intent to exercise a purchase option on leased computer equipment was, in fact, an exercise of the option. *See* 20 Cl.Ct. 222, 228 (1990). This court held that, because the government's letter merely expressed a future intent to purchase the option, "the defendant *did not* create an enforceable contract to purchase the subject equipment because we do not think that the qualified notice issued here rises to the level of unconditional assent required by the case law for a true exercise of an option." *Id.* at 231. Plaintiff in that case could not waive the contract law requirement that the acceptance of an option must be " 'unqualified, absolute, unconditional [or] unequivocal.' " *See id.* at 231–32 (alteration in original) (quoting *Civic Plaza Nat'l Bank v. First Nat'l Bank in Dallas,* 401 F.2d 193 (8th Cir.1968)).

*LaSalle Partners v. United States* involved a contract between a plaintiff and the United States in which the United States agreed to pay the plaintiff $200,000 to formulate a business plan for a development project, with an option to "proceed with the development using the business plan" developed by the plaintiff. 48 Fed.Cl. at 798–800. When the government decided not to exercise the option and proceeded with the development project without the plaintiff, the contractor sued the government "conten[ding] that it [was] entitled to damages including lost development fees and profits arising from the government's decision to federally fund" the development project rather than proceed with plaintiff. *Id.* at 805–06. The court

concluded that the government had never exercised the option because the option was "only to be exercised after the development plan was approved, a development agreement had been negotiated, and the government had elected to proceed with development by exercising the option 'in writing,' " and *none* of these conditions precedent for exercising the option were ever satisfied. *Id.* at 807. Although there was ample evidence that the LaSalle Partners plaintiff would have waived such conditions precedent, the court nonetheless held that the government had not exercised the option. *Id.*

Similarly, in this case, plaintiff may not hold the government to an option that it never expressed an intent to exercise simply by asserting that it is willing to waive written notice and any conditions precedent. Although in some circumstances conditions precedent and written notice may serve to protect the optioner and therefore the optioner may waive them, there must be sufficient compliance by the optionee with the terms of the option that the optionee's intent to exercise the option is "unqualified, absolute, unconditional [or] unequivocal." *Uniq Computer,* 20 Cl.Ct. at 232 (internal quotation marks omitted). Such intent by the government is absent here.[10]

**B. Plaintiff Is Not Entitled to Recover on Its Theory that the Government Breached the Clause in Section H.9 Prohibiting Installation of Plaintiff's Software and Hardware**

 The plain language of the contract is unambiguous: the prohibition on installation of hardware and software is part of the option that the government did not exercise, and plaintiff is not entitled to recover for breach.[11]

**10.** Plaintiff's Motion appeals—understandably—to its reader's sense of fairness, stating, "The Government now, having already taken the right [to modify the software] without paying for it, denies that it must pay anything because it never had the power to demand that SPC make the sale. But the Government cannot excuse one of its breaches with another one—and it certainly cannot deny the duty to pay for what it has taken by pointing out that it should not have taken it in the first place." Pl.'s Mot. 46. If the government in fact modified the software in the manner

contemplated by the option without paying for it, the proper remedy cannot be to sue under the option seeking contract damages for breach of a contract that was never made. Moreover, whether or not the government modified the software is irrelevant to the question whether the option was exercised.

**11.** Because the court finds that the language of the contract is unambiguous, the court need not consider plaintiff's argument that the contract language should be construed against the govern-

Plaintiff contends that the language in Section H.9 that reads "[t]he Government may not install or operate the software and proprietary hardware at any additional installations, other than those installed, and licensed to operate by the original contractor," Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200, exists independently of the option and that the government breached this contract provision when it contracted with Mosler/Diebold to install AECS systems at the additional bases, Pl.'s Mot. 29–31.[12] Plaintiff states:

> Section H.9 contained two separate components. First was an option in the case SPC was no longer able to perform, for the Government to purchase the source code to enable it to modify or adapt the software and proprietary hardware 'to support the system over its life cycle' at 'installed sites.' And second was a restriction on the Government installing software or proprietary hardware that made up SPC's offering at additional installations with someone other than SPC. These two components of Section H.9 were entirely separate; indeed, in the original Contract, they formed two separate and distinct paragraphs.

Pl.'s Reply 13 (citations omitted) (quoting Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200).

Defendant replies that "the sentence Count II is based upon [the prohibition on additional installation] is also part of that option clause," Def.'s Reply 17, and that "the Government did not exercise the option containing the provisions that SPC asserts have been breached," id. at 4.

The court is directed that "[w]henever possible, courts should look to the plain language of the contract to resolve any questions of contract interpretation." Aleman Food Servs., Inc., 994 F.2d at 822. "The language

of a contract ... must be given the meaning that would be derived from the contract by a 'reasonably intelligent person acquainted with the contemporaneous circumstances.'" Allied Tech. Grp., Inc., 39 Fed.Cl. at 138 (quoting Hol–Gar Mfg. Corp., 169 Ct.Cl. at 388, 351 F.2d at 975).

Here, the plain language of the contract can only be read to find that the language relied on by plaintiff was part of the option. CLIN 0011 states that the effort required for its completion was "as described in Section H.9 of contract," and that such effort would cost the government $7,039,870 "if option exercised." Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04138 (emphasis added). Although titled "Computer Software and Hardware Data Rights," the text of Section H.9 makes clear that the entire provision is an option, with repeated conditional language and the use of the word "option." Id. at SPC 04200.

The clause begins with a phrase that limits its application to specific circumstances, "In the event [that certain events occur], the Government may exercise the contract option to buy limited software and hardware data rights to the AECS software and hardware." Id. (emphasis added). Both the conditional language at the beginning of the sentence and the reference to the contract option inform the reader that this section is an option, a conclusion not disputed by plaintiff. Pl.'s Mot. 43 ("There is no dispute between the parties that § H.9 of the Contract contained an option clause."). Moreover, the identification of the clause as an option continues after the first sentence. Section H.9 describes the reasons why "[t]his contract option" was included in the contract, and, after the sentence prohibiting the government from installing or operating the

ment as the drafter of the contract. See id. at 39–41; Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1352 (Fed.Cir.2006) (noting that "contra proferentem is a 'rule of last resort' that 'is applied only where there is a genuine ambiguity and where, after examining the entire contract, the relation of the parties and the circumstances under which they executed the contract, the ambiguity remains unresolved.'" (quoting Lewis v. United States, 29 Cont. Cas. Fed. (CCH) ¶ 82,470, 1982 WL 36670, at *7 (Ct.Cl.

Trial Div.) (setting forth the recommended decision of the trial judge), adopted, 231 Ct.Cl. 799, 800, 1982 WL 25232 (1982) (per curiam))).

12. Although plaintiff contends that the prohibition of installation in Section H.9 is independent of the option, as defendant points out, "the $7,039,870 fee SPC seeks is the amount the Government would owe had it exercised that option." Def.'s Mot. 13; see id. at 21.

software or hardware at additional installations, immediately states, "Should *this option* be exercised, the Government claims [certain rights]." *Id.* (emphasis added). Section H.9 concludes by providing for the placement in escrow of the relevant software and hardware. *Id.* Not only does the word "option" appear repeatedly, but it also appears throughout the clause combined with the conditional phrasing of most of the sentences in Section H.9, supporting the court's conclusion that the entire provision—including the sentence relied upon by plaintiff—constitutes an option.

The relevant provisions of the DFARS incorporated into the contract by reference do not change the court's conclusion or render the prohibition in Section H.9 superfluous. Plaintiff and defendant agree that 48 C.F.R. § 252.227–7013 (1988) " 'explains the Government's rights in software installed pursuant to the contract.' " Pl.'s Reply 15 (quoting Def.'s Reply 15). Subsection (c)(2) provides that "[t]he Government shall have unlimited rights in . . . (ii) Computer software required to be originated or developed under a Government contract, or generated as a necessary part of performing a contract." 48 C.F.R. § 252.227–7013(c)(2). Defendant and SPC agree that the government had unlimited rights in the software that was delivered pursuant to the contract, Pl.'s Reply 15, Def.'s Reply 12–13, which includes "rights to use, duplicate, release, or disclose, technical data or computer software . . . in any manner and for any purpose whatsoever, and to have or permit others to do so." 48 C.F.R. § 252.227–7013(a)(19). As SPC and defendant also agree, "While the DFARS fully explains the Government's rights in software installed pursuant to the contract, the DFARS does not describe what rights the Government has with respect to the source code that could be obtained through exercise of the option clause at Section H.9 of the contract." Def.'s Reply 15; *see also* Pl.'s Reply 16. Accordingly, as plaintiff acknowledges, "The Government's usage rights under Section 7013 were not exercised or even implicated by" the government's alleged installation of plaintiff's software and proprietary hardware at additional facilities. Pl.'s Reply 16.

The parties appear to agree that the relevant DFARS provision, § 7103, applies only to the object code (computer software installed and run on computers, *see* Pl.'s Reply 16 n. 5) and technical data actually delivered under the contract, and not to the original source code written by software engineers, *see id.* at 17–18 (citing, inter alia, *Ship Analytics Int'l, Inc.,* ASBCA No. 50914, 01–1 BCA ¶ 31,253; *Bell Helicopter Textron,* ASBCA No. 21192, 85–3 BCA ¶ 18,415;) *Data Rights of Contractors With the Government,* 1995–1996 A.B.A. Sec. Intell. Prop. L. Ann. Rep. 337; Oral Argument of June 20, 2012, Argument of Mr. Thomas Craig at 9:58:40–50, 9:59:06–14; Oral Argument of June 20, 2012, Argument of Mr. Michael Goodman at 10:16:58–17:18. The software installed at Kirtland, Minot and Eglin Air Force Bases was object code; plaintiff alleges that its source code, not its object code (in which the government had unlimited rights), was used to install plaintiff's software and proprietary hardware at the additional bases in violation of Section H.9. *See* Pl.'s Reply 15–19.

It also appears, therefore, that both parties agree that only Section H.9 of their contract bears on the subject of rights in the software source code. *See* Oral Argument of June 20, 2012, Argument of Mr. Thomas Craig at 9:59:28–44 (stating that Section H.9 deals with source code and more); Oral Argument of June 20, 2012, Argument of Mr. Michael Goodman at 10:11:09–15 (stating that the option clause "says the government can buy the source code"), 10:17:31–54. This interpretation is confirmed by the portion of Section H.9 that states: "The software and hardware may be modified or adapted by the Government to support the system over it[ ]s life cycle provided that the additional, negotiated fee[ ] is paid for the software *source code.*" Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200 (emphasis added). Section H.9 provided the government with an option to purchase "limited software and hardware data rights to the AECS *software* and hardware," including "the software source code" for an additional, negotiated fee. *Id.* The court's interpretation that Section H.9 is an option clause, including the

provision prohibiting installation of software using source code and hardware purchased pursuant to the option at additional bases, is fully consistent with the parties' (and the court's) understanding of the relevant DFARS provisions that bear only upon the object code delivered pursuant to the contract.

■ The court notes plaintiff's argument that the prohibition of installation at the additional bases was set off as a separate paragraph within Section H.9 both in the Request for Proposals (RFP) and in the initial contract between the parties before the Supplemental Agreement was signed that placed the sentence in its present location. *See* Pl.'s Mot. 7, 36; Pl.'s Mot. Ex. 1(RFP) SPC–02251; Pl.'s Mot. Ex. 2 (Contract) SPC–000183. According to plaintiff, the RFP and a previous contract between the parties can be used to interpret the meaning of the contract, relying on the Restatement (Second) of Contracts, which states that " '[a]greements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish ... the meaning of the writing, whether or not integrated.' " Pl.'s Reply 9 (brackets in original) (quoting Restatement (Second) of Contracts § 214(c) (1981)). "It is true, as plaintiff argues, that evidence extrinsic to the contract itself may ... be relevant in contract interpretation." *Linda Newman Constr. Co. v. United States,* 48 Fed.Cl. 231, 235 (2000) (citing *Gen. Dynamics Corp. v. United States,* 47 Fed.Cl. 514, 547 (2000)). In particular, "The effect of a contract modification 'should be considered in the context of the entire contract,' and '[a]ll circumstances surrounding the negotiations held prior to the execution of the modifications need to be examined.' " *Id.* (quoting *CYR Constr. Co. v. United States,* 27 Fed.Cl. 153, 159 (1992)).

However, the texts of Section H.9 appearing in the RFP and in the original contract do not support plaintiff's position. Although the prohibition of installation at additional bases does appear in a separate paragraph both in the RFP and in the original contract, that separate paragraph appeared within Section H.9, which was then, as thereafter,

defined in the CLIN sections of both documents as an option provision. Pl.'s Mot. Ex. 1(RFP) SPC–02235, SPC–02244, SPC–02251; Pl.'s Mot. Ex. 2 (Contract) SPC–000007, SPC–000015, SPC–000183. Furthermore, the revision in the Supplemental Agreement, which took the prohibition, earlier expressed as a separate paragraph, and moved it into the middle of the option text, shows, if anything, an intent to tie that provision more closely to the language of the option. Having agreed to such a change, plaintiff cannot now rely on earlier versions of the agreement which, because of the positioning of the relevant text, appear more to SPC's advantage. *See Schoeffel v. United States,* 193 Ct.Cl. 923, 934, 1971 WL 3833 (citing *Willems Indus., Inc. v. United States,* 155 Ct.Cl. 360, 369, 295 F.2d 822, 827 (1961)) ("When a detailed contract is executed by the parties, it will be presumed to represent their complete undertakings and is conclusive and in derogation of any prior understandings not included within the instrument itself. Under this rule the earlier contracts cannot modify the last one which was valid and stands on its own feet."); *cf. Munoz v. Social Sec. Admin.,* 97 Fed. Appx. 910, 912 (Fed.Cir.2004) (unpublished) (holding that, where a party attempted to rely on a clause that appeared in an earlier draft the agreement, "as a matter of contract interpretation, an omitted draft clause cannot contradict an included final clause").

Defendant also contends that the sentence relied upon by plaintiff, standing alone, lacks clarity whereas, if read in the context of the option, the sentence is very clear. Def.'s Reply 15–16. The sentence prohibits the government from "install[ing] or operat[ing] *the software and proprietary hardware* at any additional installations, other than those installed, and licensed to operate by the original contractor." Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200 (emphasis added). As defendant points out, the phrase "the software and proprietary hardware" appears to reference software and proprietary hardware elsewhere described in the contract, as this phrase itself does not describe the hardware and software to which it refers. Def.'s Reply 15–16; *see also* Oral Argument of June 20, 2012, Argument of Mr. Michael Goodman at 10:20:20–35.

Section H.9 provides that "the Government may exercise the contract option to buy *limited software and hardware data rights to the AECS software and hardware.*" Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200 (emphasis added). As previously noted, the parties appear to agree that this sentence refers to the source code for plaintiff's software and additional data rights not otherwise delivered under the contract. *See supra* Part III.B. Section H.9 then provides that "[t]he Government may not install or operate *the software and proprietary hardware* at any additional installations," and that *"[t]he software and hardware* may be modified or adapted by the Government to support the system over it[ ]s life cycle provided that the additional, negotiated fee is paid." Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200 (emphasis added). The two references in Section H.9 to the software and proprietary hardware can only refer, as defendant suggests, to the "limited software and hardware data rights to the AECS software and hardware" that the government could acquire pursuant to the option. The phrase "the software and proprietary hardware" cannot stand alone, as plaintiff suggests, but instead appears to reference another contractual provision that would describe *which* software and hardware. Looking to the most closely related description of hardware and software, which is the description of the rights the government could acquire under the option contained within the same contractual provision, the court concludes that the prohibition sentence refers to the rights to source code that the government could obtain by exercising the option. This provides additional support for the court's conclusion that the sentence relied upon by plaintiff is inextricably intertwined with the option and was not intended to stand alone as an independent prohibition on the government.

For the foregoing reasons, the sentence relied upon by plaintiff must be read as part of the option. Because the option was never exercised, *see supra* Part III.A, there was no breach of contract and plaintiff is not entitled to relief.

## C. Plaintiff Cannot Recover in Quantum Meruit in This Court

In the alternative to its two arguments based on breach of its express contract with the government, plaintiff seeks to recover on a theory that it is owed in quantum meruit. Plaintiff argues that "[e]ven if [the] option was, for technical reasons, not exercised, there was still an implied-in-fact contract between the parties that if the Government wanted to continue the program by modifying or altering the software and proprietary hardware to support the system over its life cycle, it would pay SPC the agreed upon fee," Pl.'s Mot. 48, "[t]he Government, having received the benefit of years of hard work and effort by SPC and its employees on the AECS program, owes SPC compensation for its continued modification, adaptation and installation of the software and proprietary hardware developed under SPC's Contract," *id.* at 49.

The court lacks jurisdiction over plaintiff's claim for recovery in quantum meruit. "A recovery in quantum meruit is based on an implied-in-law contract. That is, a contract in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. The Court of Federal Claims, however, lacks jurisdiction over contracts implied in law." *Int'l Data Prods. Corp. v. United States,* 492 F.3d 1317, 1325 (Fed.Cir.2007); *L–3 Servs., Inc. v. United States,* 104 Fed.Cl. 30, 35 n. 2 (2012). Because the court lacks jurisdiction over contracts implied in law, it cannot consider plaintiff's claim for recovery in quantum meruit.

Plaintiff also characterized its claim as a contract implied in fact. *See* Pl.'s Mot. 48. An implied-in-fact contract is "an agreement . . . founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923); *cf. Scott Timber Co. v. United States,* 97 Fed.Cl. 685, 696 (2011) ("Acceptance of an offer can be manifested

by [a party's] conduct, and conduct alone can create an implied-in-fact contract."). Like an express contract, a party alleging an implied-in-fact contract "must show a mutual intent to contract including an offer, an acceptance, and consideration." *Trauma Serv. Grp. v. United States,* 104 F.3d 1321, 1325 (Fed.Cir. 1997). To establish an implied-in-fact contract with the United States, a party must also show that "the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Id.; see also Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1432 (Fed.Cir.1998) ("[T]he government is not bound by the acts of its agents beyond the scope of their actual authority."). And, importantly for this case, "An implied-in-fact contract cannot exist if an express contract already covers the same subject matter." *Trauma Serv. Grp.,* 104 F.3d at 1326.

■ It is clear that the express contract between the parties covered the issue of when and under what circumstances "the Government may … buy limited software and hardware data rights to the AECS software and hardware" in Section H.9 and, in particular, made provision for modification or adaptation of the software and hardware. Pl.'s Mot. Ex. 3 (Supplemental Agreement) SPC 04200. SPC seeks implied-in-fact contract recovery for the government's "continued modification, adaptation and installation of the software and proprietary hardware developed under SPC's Contract." Pl.'s Mot. 49. Because the parties' express contract already covers modification, adaptation and installation of plaintiff's software and hardware, an implied-in-fact contract between SPC and the government cannot exist that covers this same subject matter. *See Trauma Serv. Grp.,* 104 F.3d at 1326.

IV. Conclusion

For the foregoing reasons, the court concludes that there is no genuine issue of material fact and that defendant is entitled to summary judgment. Accordingly, defendant's Motion is GRANTED and plaintiff's Motion is DENIED. The Clerk of Court

shall enter judgment for defendant. No costs.

IT IS SO ORDERED.